# *Raymond L. Colón, Esquire*

*Attorney and Counselor at Law*
*131 Pugsley Avenue • Bronx • New York 10473*
*Phone (917) 418-4701 Fax (914) 218-6999*
*Email: rlcolonesq@aol.com*

*Member New York and New Jersey Bars*

May 28, 2023

**VIA ECF**
United States Attorney's Office
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007
Attention: AUSA's Elinor Lynn Tarlow,
Jacob Harris Guttwillig, Jason Andrew Richman,
David A. Robles

        Re:  USA v. Diaz Morales
        Defendant: Juan Orlando Hernandez Alvarado
        Criminal Docket No.: S7 15-CR-00379 (PKC)

## Rule 16 and 3500 Supplemental Discovery Demand

Esteemed Counsel(s),

    In January of 2010, the Department of Justice (DOJ), through Deputy Attorney General David Ogden, issued three memoranda providing extensive "guidance" to expand and clarify the discovery obligations of federal prosecutors in criminal cases. This new "guidance" followed certain high profile criminal prosecutions in which the government was found to have violated its obligation to provide exculpatory evidence to defendants (including the public corruption case against former U.S. Senator Ted Stevens).

    Among the more noteworthy aspects of the Ogden Memoranda were: (1) strongly emphasizing that the government's approach to disclosure should not be driven by strategic considerations but instead by the fundamental relationship between full and fair disclosure and the ultimate goal of a "fair and just result" in every case; (2) ensuring that prosecutors nationwide have a broad and inclusive checklist of where they have to look and what they must review in discharging their discovery obligations; (3) encouraging prosecutors to provide "broad and early discovery"; and (4) stating for the first time as a matter of DOJ policy that all witness interviews "should be memorialized," including "all material variances in a witness's statements."

    Pursuant to Fed. R. Crim. P. 16, defendant Juan Orlando Hernandez Alvarado through Counsel requests that the government provide the defendant with discovery and disclosure of the

following items which are enumerated herein; as well as permitting defendant to inspect and copy or photograph the following items which are in the possession, custody or control of the government; or requiring the government to state that such items do not exist.

Discovery and inspection of the items described below (i.e. documents, video/audio recordings, photos, reports, etc.) is both reasonable and necessary to the preparation of the defense in this case. Defendant requests the discovery and inspection relating to items in the possession, custody, or control of the United States Attorney, as well as all federal agencies (i.e. including but not limited to
or government entities over which it has sufficient control or liaison with to obtain access to materials possessed by such agency or entity). With respect to those items requested which the United States Attorney does not have in its possession, we ask for a statement to the effect that such items do not exist or are not in the United States Attorney's possession.  If the United States Attorney is aware that a requested item exists, but does not have it in its possession, then we request that the United States Attorney disclose the whereabouts of the item; and/or procure all of those items from the Government of Honduras, or any other nations related to this conspiracy (i.e. Guatemala, Mexico, Columbia and Venezuela).

As used herein, the term "document" means any tangible thing containing, reflecting or capable of reproducing or of having reproduced from it, visually or orally, language, numerals or pictures, and relating or referring in any manner to the allegations of the indictment and the matters referred to therein.

Discovery is requested again as the following:

## STATEMENTS OF ALL CO-DEFENDANTS/INDICTED OR UNINDICTED CO-CONSPIRATORS/COOPERATING WITNESSES AND AGENT PROVOCATEURS

Statements of Co-Defendants:

1. Any oral, written or recorded statements, other than those statements provided by the government in the complaint filed herein in this matter, made by any codefendant to a law enforcement officer, including such statements which the government does <u>not</u> intend to introduce as evidence at trial.

Indicted or Unindicted Co-Conspirators/Cooperating Witnesses, Agent Provocateurs, Sources of Information and Volunteer Statements

2. Any oral, written, or recorded statement made by any indicted or unindicted co-conspirators, cooperating witnesses, agent provocateurs, sources of information and volunteers other than those statements provided by the government from the inception of the conspiracy to the present and continuing through the commencement of trial. This request includes, but is not limited to, all such statements the government intends to introduce at the trial against any defendant under the co-conspirator exception to the hearsay rule. *See* Fed. R. Evid. 801(d)(2)(E).  This request includes all statements, recorded, unrecorded, memorialized in any electronic form, video, audio, satellite feed, encryption format, texts, instant messages, WhatsApp, Signal, et al:

(a) Made to U.S. government agents or third-party foreign nationals, whether or not the indicted or unindicted co-conspirators, cooperating witnesses and agent provocateurs, sources of information and volunteers knew that such persons were government agents when they made the statements;

(b) Made to persons other than U.S. government agents, who are possible government witnesses in this case; and

(c) Made to persons other than U.S. government agents whom the government does not intend to call as witnesses in this case, which statements are, or tend to be, exculpatory of the defendant.

This request includes face to face meetings, telephone calls, instant messaging, WhatsApp chats, or any other communications made by any indicted, as well as unindicted co-conspirator(s), co-conspirators, cooperating witnesses and agent provocateurs, as requested above.

3. The names, addresses, and phone numbers of each expert witness the government intends to call at trial including, but not limited to, government agents, along with any reports, studies, or other data which such expert will rely on in giving his/her testimony.

(a) The name, current job title and work or residential address of any person the government intends to call as an identifying witness to any recorded, unrecorded conversations or memorialized in any form, where such witnesses will render an opinion that the voice of a participant to such conversation was the voice of the defendant.

4. Any and all reports and memorialized communications of the Department of State (DOS), Central Intelligence Agency (CIA) – inclusive of all CIA diplomatic cover station officers/personnel/Non-Official Cover (NOC) officers, Special Operations Division personnel/contractors, Special Activities Division personnel/contractors), National Geo Spatial Intelligence Agency Drug Enforcement Agency (DEA), Defense Intelligence Agency (DIA), National Security Agency (NSA), any and all branches of the U.S. Armed Forces (U.S. Army - U.S. Special Operations Command - Southern Command (SouthCom), U.S. Navy, U.S. Marine Corps., U.S. Airforce, U.S. Coast Guard, National Guard and Reserves), Federal Bureau of Investigation (FBI), Customs and Border Patrol (CBP), Department Homeland Security (DHS), U.S. Department of the Treasury and the Office of Foreign Assets Control (OFAC) and any other governmental agency, as well as independent contractors which possess either classified information or evidence relevant to this indictment and the crimes charged; and also reveal the arrest, conviction or prior criminal record of any indicted or unindicted co-conspirators, cooperating witnesses, agent provocateurs, sources of information and volunteers; where the government will seek to introduce evidence of such conviction or of an act underlying such conviction, or such records pertaining to any prospective government witness(es).

5. Any and all reports, cables, emails, texts, instant messages, Blackberry communications, direct messaging, WhatsApp, Signal, etc., documents or written notes; or if not in writing, the

substance of any agreement between the government and any prospective government witness concerning leniency or favorable treatment he or she might receive at the hands of the government.

6. Any and all promises, representations, offers or any other statements made to any witness in this case involving either grants of immunity or representations, that the witness would not be prosecuted for either the conduct which is the subject of this indictment, or any other misconduct that the prosecutor knows of.

7. Any other investigations that the U.S. government as well as the Governments Honduras, Guatemala, Columbia and Venezuela may have pending or was terminated against any of the witnesses who will be called by the prosecution in this case.

8. State whether any witness(es) or prospective witness(es) was subject to polygraph examinations and the results thereof. If so, provide the identity of the witness(es) and examiners and copies of any reports or tapes.

9. State whether any witness(es) or prospective witness(es) was subject to hypnosis or the use of any drugs in connection with their being interviewed. If so, describe the circumstances surrounding the hypnosis and provide copies of the video and/or tape recordings used to memorialize the hypnotic procedure.

10. Set forth all judicial proceedings in any criminal case involving (as a witness, or co-conspirator of defendant) any person who is a potential government witness at the trial in this action.

## DOCUMENTS AND TANGIBLE OBJECTS

11. Pursuant to Fed. R. Crim. P. 16(a)(1)(C), all books, papers, documents, photographs, video and audio recordings, tangible objects, buildings or structures, places, or copies of portions thereof which:

(a) Are material to the preparation of the defense, including those obtained from third parties, any foreign country nationals and other nations' intelligence agencies (i.e. Honduras, Guatemala, Columbia and Venezuela) related to the charges in this indictment; and

(b) Are intended for use by the government as evidence in its case-in-chief at trial.

This request includes, but is not limited to, any logs, books, papers, documents, photographs or other tangible objects, or copies thereof, which came into the possession, custody or control of the prosecution by subpoena, seizure or request directed to any person whom the prosecution intends to call as a witness at trial.

This request also specifically includes, but is not limited to, any logs, books, records or other documentation within the possession, custody or control of the U.S. government (or Honduras, Guatemala, Columbia and Venezuela) having to do with the defendant's medical

history, financial or business activity, as well as that of any witness the prosecution intends to call at trial.

## SCIENTIFIC EXPERIMENTS AND REPORTS

12. Pursuant to Fed. R. Crim. P. 16(a)(1)(D), any and all intelligence profiles of Juan Orlando Hernandez, results or reports of physical or mental examinations and of scientific tests or experiments, or copies thereof which were generated pursuant to the investigation underlying, or related to, this case, which are within the possession, custody or control of the U.S. or Honduran governments, the existence of which is known, or by the exercise of due diligence may become known, whether or not the U.S. government intends to offer such evidence or such reports during its case-in-chief.

## SEARCHES OR PHYSICAL SURVEILLANCES

13. Any and all applications by the United States of America, Honduras and any other country (and attendant documents and/or exhibits), affidavits, testimony, inventories and/or orders seeking, granting or denying judicial permission to conduct a physical search of any person or premises which relate to this case, and which are within the possession, custody or control of the government, the existence of which is known or through the exercise of due diligence may become known to counsel for the government.

14. Any and all documents, objects or other tangible things which were obtained by virtue of any physical search by the United States of America or Honduras and any other country, and/or seizure of any person or place, with or without prior judicial authorization, and which are germane to this case and are within the possession, custody or control of the government, the existence of which is known or through the exercise of due diligence may become known to counsel for the government, whether by the United States of America or Honduras.

15. Any and all pre-trial identification procedures by the United States of America, Honduras or any other country used in this case, including but not limited to voice identification procedures, photographic displays, lineups, showups, etc. State the nature and circumstances of such identification procedure as well as the time, date, and place of the identification. State whether any witnesses had mistaken identification, or were uncertain in making identification.

16. Any and all photographs (still photography), video and audio recordings or motion pictures which were made in conjunction with this case, or which relate in manner to this care, which are within the possession, custody or control of the U.S. or Honduran governments, the existence of which is known or through the exercise of due diligence may become known to counsel for the government.

17. Any and all applications, whether by the United States of America, Honduras or any other country, or affidavits, orders or other documents which relate to any telescopically-enhanced surveillance which was conducted in conjunction with the investigation underlying this case which relate in any manner to this case, which is in the possession, custody or control of the government, the existence of which is known or through telescopically-enhanced satellite surveillance was

5

accomplished without court order, please indicate this, including relevant dates, time, places, geo-spatial coordinates, longitudes, latitudes, etc.

18. Any and all warrantless applications, whether by the United States of America, Honduras and any other countries' affidavits, orders or other documents which purport to grant consent to search any individuals, persons or premises which relate, in any manner, to this case and which is in the possession, custody or control of the U.S. or Honduran governments, the existence of which is known or through the existence of due diligence may become known to counsel for the government.

19. Any and all notes, memoranda, reports or other writings made by U.S. officers or agents, as well as any law enforcement agency during physical surveillance of any defendants and/or alleged co-conspirator in this case; whether indicted or unindicted.

## BRADY DISCLOSURE

20. Any and all written or recorded statements, admissions, or confessions made by any witnesses, non-witnesses, co-defendants, indicted or unindicted co-conspirators, cooperating witnesses or agent provocateurs, sources of information and volunteers, which may be exculpatory, non-incriminating or otherwise favorable to any defendant; or any debriefings, summaries, synopses, notes, memoranda, or resumés thereof; regardless of whether such statements are reduced to writing and regardless of whether the prosecution intends to use such statements at the trial.

21. Any and all stenographic, mechanical, electrical or other recordings or a transcript thereof which is an account of an oral statement by such witness to an agent of the prosecution.

22. Any and all notes, memoranda, summaries, reports or statements of any kind prepared in connection with the investigation of this case which are in any way favorable to the defense, including notes prepared by the government or any of its agents in connection with either the review of documents or the interview or other conversations with witnesses or other individuals contacted in connection with this case.

23. Any and all criminal records of any and all witnesses or actors (Jorge?) intended to be utilized in any fashion by the prosecution, or any other such information demonstrating the commission on their part, or participation therein, of any so-called "bad acts", or other instances of immoral or criminal conduct, or conduct bearing upon veracity (i.e. Giglio material).

24. Any and all statements, memoranda or other similar notations or information which would in any way reflect inconsistent statements made by any witnesses contacted by the government, or any such individual engaged in lying or other conduct calculated to conceal the truth or improperly reflect facts.

25. Any information tending to indicate that information supplied by a particular document or witness which contradicts or is contradicted by a different document or witness.

26. Any evidence or admission of bias by any witness as to any defendant.

27. Any evidence of any person who is aware of the reputation for untruthfulness of any government witness. *See* Fed. R. Evid. 608(a)

28. Any and all promises, understandings or agreements, formal or informal, whether by the United States of America, Honduras or any third countries, between the prosecution, its agents and representatives and persons (including counsel for such persons) whom the prosecution intends to call as witness at trial, together with copies of all documentation pertaining thereto. This request includes, but is not limited to, such promises, understandings or agreements as may have been made in connection with other cases or investigations. This request includes information concerning any payment or monies to any prospective witnesses, indicted or unindicted co-conspirators, cooperating witnesses and agent provocateurs, sources of information and volunteers.

29. Any and all actions, promises or efforts – formal or informal – on the part of the prosecution, its agents, representatives, indicted or unindicted co-conspirators, cooperating witnesses and agent provocateurs, sources of information and volunteers (Jorge ?) to aid, assist or obtain benefits of any kind for any person whom the prosecution considers a potential witness at trial, or a member of the immediate family of such witness. This request includes, but is not limited to: (a) letters to anyone informing the recipient of the witness's cooperation; (b) recommendations concerning federal aid or benefits; (c) recommendations concerning licensing, certification or registration; (d) promises to take affirmative action to help the status of the witness in a profession, business or employment or promises not to jeopardize such status; (e) aid or efforts in securing identity for a witness and his/her family, together with all other actions incidental thereto; (g) direct payments of money or subsidies to the witness; or (h) any other activities, lobbying efforts, or promises similar in kind or related to the items listed in (a) through (g) above. In the case of Jorge ?, all confidential informant activities and reports generated as a result of his DEA informant history.

30. Any threat made to any witnesses or any members of his family by any law enforcement officer, prosecutor or agent of the government which could arguably be developed on cross-examination.

31. A list of any and all requests, demands or complaints made to the government by the witness which arguably could be developed on cross-examination to demonstrate any hope or expectation on the part of the witness for favorable governmental action in his behalf (regardless of whether or not the government has agreed to provide any favorable action).

32. Any material not otherwise listed which reflects or evidences the motivation of the witness, either to cooperate with the government or evidences any bias or hostility against the defendant.

33. Any and all statements – formal and informal, oral or written – by the prosecution, its agents, representatives, indicted or unindicted co-conspirators, cooperating witnesses and agent provocateurs, sources of information and volunteers, to any person (including counsel for such persons), whom the prosecution intends to call as a witness at trial pertaining in any way to the

possibility, likelihood, course or outcome of any government action – state or federal, civil or criminal – or immigration matters against the witness, or anyone related by blood or marriage to the witness.

34. Whether any witnesses were subjected to a polygraph and, if so, the tapes, reports, identities of witnesses and examiners.

35. Whether any witnesses had been incarcerated in federal or state prison and, if so, the prison record of such prospective witness.

36. Any and all evidence of the abuse of alcohol, illegal drugs or narcotics or prescription drugs which have a mind or sensory altering effect by a witness from a week before through the date of the rendering of any sworn testimony provided to any grand jury, and at any time since commencing his/her cooperation with the government.

37. Any and all information as to whether any witnesses have been voluntarily or involuntarily hospitalized for psychiatric or drug or alcohol-related treatment or other compulsions or dependencies, or has been professionally diagnosed by any psychiatrist, psychologist or social worker or treated for psychiatric or drug or alcohol-related problems or other compulsions or dependencies without hospitalization.

38. Unsealing of any and all sealed proceedings or transcripts, inclusive of blacked out/redated portions of plea transcripts, sentencing allocutions/colloquies; additionally, provide all original 3500 discovery materials related to USA v. Diaz-Morales and its progeny, wherein any of those materials have been blacked out or redacted.

39. Any and all inconsistent statements made by any declarants whose hearsay statements are to be offered against any defendant pursuant to Fed. R. Evid. 801 (d) (2), (C), (D) or (E).

41. A listing of any and all judicial proceedings in any criminal cases whether in the United States of America or Honduras involving (as a witness, indicted or unindicted co-conspirators, cooperating witnesses, agent provocateurs, sources of information and volunteers and aiders or abettors); or any person who is a potential prosecution witness at the trial in this action.

42. Any statement or documents, including but not limited to, grand jury testimony and federal, state and local tax returns made or executed by any potential prosecution witness at the trial in this action which the prosecution knows, or through reasonable diligence, should have reason to know is false.

43. The names and addresses of all persons whom the prosecution, its agents, indicted or unindicted co-conspirators, cooperating witnesses, agent provocateurs and representatives believed to have relevant knowledge and/or information with reference to the charges contained in the indictment; but whom the prosecution does not propose to call as witnesses at trial.

44. Any exculpatory information given before the grand jury.

45. If not already provided to defense counsel, a copy of the prior criminal record, if any, of co-defendants, actual or alleged, indicted or unindicted co-conspirators, cooperating witnesses and agent provocateurs, sources of information and volunteers operating on behalf of the United States of America, and a statement of the use, if any, the prosecution intends to make of such records at trial.

46. If it is the intention of the United States Attorney to offer prior or subsequent "similar act" evidence at trial to demonstrate defendant's intent, motive, etc. (*see* Fed. R. Evid. 404[b]), it is respectfully submitted that the defendant should be apprised of such evidence prior to trial so that he may adequately prepare his defense.

47. Provide counsel with a list of the names or aliases and the legal rationale for the non-prosecution of each and every unindicted co-conspirator known to the U.S. government or identified in the government's Rule 16 and 3500 audio/video discovery; and who have been implicated in the conspiracy by virtue of the government's own witnesses (e.g. ex-Honduran President Porfirio "Pepe" Lobo and Honduran Congressional Deputy Oscar Najera)

48. Set forth a list of all documents, intercepts, emails, texts, instant messages, WhatsApp, Signal, etc., encrypted communications, used, obtained or written in connection with the investigation preceding the indictment that the government destroyed, for whatever reason, including, but not limited to, rough notes of interviews, reports, memoranda, subpoenaed documents and other papers.

49. Provide copies of all transcripts of news releases and press conferences or any other information furnished to any media outlets by either the U.S. government's Voice of America/U.S. Department of State's Bureau of Public Affairs, the Special Operations Command and the DEA, with respect to the defendant Juan Orlando Hernandez Alvarado during his tenure as a Honduran Congressional Deputy, President of the Honduran Congress and President of the Republic of Honduras. As to the Special Operations Command and DEA, provide details (i.e. dates, times, places and results) of each and every joint antinarcotics operation(s) and interdictions(s).

50. State whether the U.S. government, any of its agents, attorneys and agent provocateurs who attempted to obtain information from any prospective witness arguably or potentially in violation of the attorney-client privilege of Juan Orlando Hernandez Alvarado.

51. All *Jencks* material (18 U.S.C. § 3500) as previously promised in court, for all witnesses the government intends to call in its case-in-chief should be provided in advance of the commencement of trial. This request includes statements made by any witness to any grand jury in connection with the indictment or investigation herein, or any related investigations of these defendants. This request will permit orderly review of such material be defense counsel and reduce the need for lengthy trial continuances to review and properly investigate such *Jencks* material for government witnesses.

52. Submission for in camera review of all personnel files of any and all law enforcement witnesses to be called by the U.S. government; where such witnesses have been called at any time

while employed as a law enforcement officer, the subject of any complaint, investigation or other internal administrative or disciplinary proceeding.

53. Defendant expressly reserves the right to seek subsequent items of discovery not requested here if the need for the same arises out of disclosures made by the government pursuant to the instant motion or other pending motions.

## WITNESS SECURITY PROGRAM DISCOVERABLE MATERIAL REQUEST

Psychological Testing and Evaluation 9-21.330

54. Before authorizing any witness to enter the Witness Security Program, OEO will arrange for psychological testing and evaluation for each prospective witness and all adult (18 years of age and older) members of the witness's household that are also to be protected. This testing will, to the extent possible, determine if the individuals may present a danger to their relocation communities. Because the reports of the psychologists may contain information that is discoverable as potentially exculpatory *Brady* material in the criminal prosecution in which the witness is to testify, all materials submitted by the psychologists will be forwarded by OEO to the appropriate United State Attorney's Office (USAO) for review.

55. Before undergoing psychological evaluation, the witness must sign a release form authorizing the Department to use the results of the psychological evaluation to the extent necessary in connection with the witness's application for acceptance into the Program or for other lawful uses. The release form is contained in the Criminal Resource Manual at 710. It is the responsibility of the sponsoring prosecutor or agent to have the witness sign the form prior to the evaluation.

56. The reference release form includes a "no objection" to release of the tests for "other lawful use". We are requesting that this release and all the above documentation be produced accordingly.

Release Form-Psychological Evaluation 710

57. The Witness Security Reform Act of 1984 requires a psychological evaluation of each individual (18 years old) who is being considered for inclusion in the Witness Security Program.

58. The suitability of an individual for the program must be determined by OEO before that person may be accepted into the Program. One of the factors that must be considered in determining the suitability of an individual for acceptance into the Program is the report of the psychological evaluation.

59. After an individual has been psychologically evaluated, the examining authority will prepare and submit a report to the Office of Enforcement Operations, Criminal Division, Department of Justice, so that a determination can be made as to the suitability of the witness for the Program. The following is the release form, referred to in USAM 9-21.330, that each individual being psychologically evaluated is required to sign, prior to the evaluation:

I, _____, certify that I have read and understand the foregoing and that I voluntarily submit to this psychological evaluation. I also understand that my acceptance or rejection for placement in the Witness Security Program is not solely dependent upon the results of this psychological evaluation.

I also certify that I have no objection if the contents of the report of my psychological evaluation are disclosed to others in connection with my consideration for the Program or other lawful use.

        (Date) (Signature)
        (Witness or adult family members)

60. We are requesting that all the above documentation be produced accordingly.

## BILL OF PARTICULARS

61. As to each and every act(s) or allegation charged in the indictment as well as the Motions in Limine filed by the government, state with specificity the time(s), date(s) and location(s) it is alleged that the defendant committed the act(s) that were part of the offense(s) charged; and specifically, the actual dates, times and places wherein it is alleged that Juan Orlando Hernandez Alvarado received bribes, provided protection for narcotics traffickers in the drug trafficking organization (DTO) and co-conspirators in furtherance of the conspiracy; and all instances of electoral fraud that Juan Orlando Hernandez Alvarado personally participated in.

62. State the means by which it is alleged that the defendant committed the offenses charged.

63. State whether the defendant is alleged to have acted as a principle or an accomplice for the offense(s) charged.

64. State the names of known indicted, as well as unindicted co-conspirators for all the offense(s) charged.

65. State the date, time, location, persons present, when any person was asked or sua sponte made to make a voice identification of a conversation, or a recording of a conversation, which the government now contends was a conversation in which defendant Juan Orlando Hernandez Alvarado was a participant.

66. Provide the Department of the Treasury-U.S. Secret Services' Protection itinerary, activity, events attended, meetings, reports, communications and travel locations with respect to President Juan Orlando Hernandez Alvarado's foreign dignitary visits to the United States from 2013-2022.

67. Provide all Honduran Public Ministry (Ministerio Publico-MP), DOJ, DEA, DOS "Charlie (Dissent) Channel", SouthCom, CIA and NSA communications, intercepts, emails, reports, classified information exchanges/sharing with all U.S. Embassies and CIA stations in all of Latin America. With respect to DOS and CIA, specifically provide all cable traffic for the Ambassador, Deputy Chief of Mission, CIA Station Chief, CIA Deputy Station, U.S. Embassy Diplomatic

Security Officer(s) wherein Juan Orlando Hernandez Alvarado is the subject or target of the communication.

68. Provide all Honduran Government judicial/extradition proceedings, transcripts and court filings related to all co-conspirators pursuant to criminal docket number S7-15-CR-00379 (PKC) and its progeny. Specifically, those proceedings involving the prosecution in Honduras of Honduran National Nery Wilson Lopez ("Magdaleno"); specifically provide all Honduran MP materials and transcripts of the ledger that was seized from "Magdaleno" and which the government intends to move into evidence over the defendant's objection.

69. Provide a list of all Honduran nationals extradited from Honduras to the United States; as well as all Honduran Nationals who surrendered to U.S. authorities/officials (DOJ, DEA, FBI, CBP) who were co-conspirators in the above noted conspiracy.

70. Provide a list of all Honduran Nationals, as well as their dates of contacts, meetings and communications with U.S. Officials, who have cooperated, collaborated or have served as informants, for the U.S. Government (i.e. CIA, DEA, U.S. Southern Command) from 2012 to the present as it relates to the above noted conspiracy.

71. Provide all U.S. communication with and digital intercepts in Honduras or the United States of Juan Orlando Hernandez Alvarado from 2010 to the present, inclusive of his custodial detention at the Metropolitan Detention Center (MDC) in Brooklyn, New York.

72. Provide all Defense Information Systems Agency Infrastructure information sharing activity and communications across the Department of Defense.

73. Provide all DOS and the Office of Public Diplomacy and Public Affairs communications, Blackberry Messaging, press releases, emails (encrypted, as well as non-encrypted), "cables," foreign service Honduras desk officer's emails and texts related to Juan Orlando Hernandez Alvarado, related to his efforts on behalf of the United States' and Honduras' efforts and anti-narcotics joint operations in the War on Drugs.

74. Provide all U.S. Embassy-Tegucigalpa officials' meetings, communication, emails, texts with Honduran opposition political parties during the course of Juan Orlando Hernandez Alvarado's two administrations.

75. Provide any and all internal and external communications, information, changes by U.S. Embassy Officials and DOS Personnel with Honduran press, media and journalists; Specifically, entities such as INFOBAE; Univision, Telemundo, CNN, et al. and opposition parties.

NOTICE OF ALIBI

Notice of Alibi-Rule 12.1

76. As you know, the defendant has an obligation or is required to provide pre-trial notice of specific defenses within mandated time periods following written demand by the Government. However, we are unable to assess what defenses are available without a formal response from your

office with respect to our Rule 16 request noted above; especially with respect to specific time(s), date(s) and location(s).

77.     Even though I am aware that Jencks Act (18 USC §3500) material does not have to be turned over until after the witnesses respective direct examinations, I am requesting early production of the material, in light of the anticipated long length of the Government's direct case. Specifically, we are also requesting any memorandum of interviews (FBI 302's) and notes of interviews; any transcripts of prior testimony or allocution(s); and in the case of experts, any transcripts of prior testimony by these witnesses at other trials.

Respectfully,

Raymond L. Colón, Esq.