**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 7, 2024

Via ECF and Electronic Mail
The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

**Re: United States v. Juan Orlando Hernandez, S7 15 Cr. 379 (PKC)**

Dear Judge Castel:

The Government respectfully submits this letter to supplement its prior motions *in limine* in the above-captioned case, which the Court granted in relevant part during the January 18, 2024 final pretrial conference. Specifically, the Government respectfully requests the following additional rulings in advance of trial: (ii) certain statements that were made by members and associates of La Mara Salvatrucha, commonly known as "MS-13," and Juan Carlos Bonilla Valladares ("Bonilla"), are admissible as co-conspirator statements pursuant to Federal Rule of Evidence 801(d)(2)(E); and (iii) portions of four audio calls between members and associates of MS-13 that were lawfully intercepted by Honduran authorities in or around 2015 are admissible as co-conspirator statements pursuant to Rule 801(d)(2)(E).

Hon. P. Kevin Castel  
February 7, 2024

Page 2



## II. Statements Made by MS-13 Members and Associates and Bonilla Are Admissible Under the Hearsay Rules

As described in the Government's prior motions *in limine*, several of the defendant's co-conspirators made statements to witnesses, or to other co-conspirators in the presence of witnesses, regarding the drug trafficking conspiracy, their efforts to protect themselves and their drug trafficking operation, and their attempts to increase their power in Honduras through corruption and cocaine-fueled bribes. (*See, e.g.*, Dkt. 554 at 39-63.) As the Court found at the January 18, 2024 final pretrial conference, evidence of these types of statements is admissible under the hearsay rules. (*See, e.g.*, Dkt. 671 at 11-26.)

[REDACTED] In addition, as referenced in the Government's January 19, 2024 letter, (*see* Dkt. 664 at 2), the Government also seeks to offer portions of certain audio calls between members or associates of MS-13 that were lawfully intercepted by Honduran authorities and that concern the defendant's and Bonilla's involvement in the charged conspiracy. As set forth below, the same reasoning that guided the Court's prior evidentiary rulings applies with equal force here and the Court should admit the statements described herein.

### A. Applicable Law

#### 1. Rule 801(d)(2)(E): Co-Conspirator Statements

Rule 801(d)(2)(E) of the Federal Rules of Evidence provides in relevant part that "[a] statement is not hearsay if . . . the statement is offered against an opposing party and was made by the party's co-conspirator during and in furtherance of the conspiracy." To admit a statement pursuant to this Rule, the Court must find two facts by a preponderance of the evidence: *first*, that a conspiracy that included the declarant and the defendant existed; and *second*, that the statement was made during the course and in furtherance of that conspiracy. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987).

Once a conspiracy is shown to exist, the "evidence sufficient to link another defendant to it need not be overwhelming," and "the 'in furtherance' requirement of Rule 801(d)(2)(E) is satisfied" when, for example, "a co-conspirator is apprised of the progress of the conspiracy, or when the statements are designed to induce his assistance." *United States v. Paone*, 782 F.2d 386, 390 (2d Cir. 1986) (internal quotation marks omitted). Statements between co-conspirators that "provide reassurance, serve to maintain trust and cohesiveness among them, or inform each other of the current status of the conspiracy," further the conspiracy, *United States v. Simmons*, 923 F.2d 934, 945 (2d Cir. 1988), as do statements "that apprise a co-conspirator of the progress of the conspiracy," *United States v. Rahme*, 813 F.2d 31, 36 (2d Cir. 1987).

Where hearsay is admissible under the Federal Rules of Evidence, it may nevertheless be prohibited by the Confrontation Clause of the Sixth Amendment. "But a statement 'cannot fall within the Confrontation Clause unless its primary purpose was testimonial'—that is, unless the statement, viewed objectively in light of all the relevant circumstances, was made or procured with a primary purpose of 'creating an out-of-court substitute for trial testimony.'" *United States v. Bick*, 711 F. App'x 664, 666 (2d Cir. 2017) (summary order) (quoting *Ohio v. Clark*, 135 U.S. 2173, 2180 (2015)).

### B. Discussion

#### 1. Statements Made by Members and Associates of MS-13 and Bonilla are Admissible

As set forth below, these categories of statements are admissible , pursuant to Rule 801(d)(2)(E). These categories of statements, referred to as "Statement [number]," are summarized below:[3]

---



[redacted]

Each of the three categories of statements summarized above is admissible under Rule 801(d)(2)(E) against the defendant. [redacted] Statements during those conversations were made both by a member of the conspiracy and were "in furtherance" of their drug trafficking conspiracy. *See* Fed. R. Evid. 801(d)(2)(E). [redacted] As set forth in the Government's prior motions *in limine*, the Government anticipates that Leonel Devis Rivera Maradiaga ("Leonel Rivera"), one of the former leaders of the *Cachiros* DTO, will testify about the *Cachiros* DTO's involvement in the charged narcotics and firearms conspiracies. (*See, e.g.*, Dkt. 554 at 46-54.) The Government also expects that Leonel Rivera will testify that the *Cachiros* DTO used MS-13 both to protect the conspiracy's drug shipments in Honduras and to carry out acts of violence on behalf of the *Cachiros* DTO. [redacted] *See, e.g.*, *Rahme*, 813 F.2d at 36 (statements "that apprise a co-conspirator of the progress of the conspiracy" are in furtherance of the conspiracy).

---

[redacted]



*See, e.g.*, *United States v. Kuthuru*, 665 Fed. App'x. 34, 38 (2d Cir. 2016) ("Questions and commands are ordinarily not hearsay because they are not offered for the truth of the matter asserted."). In any event, these statements were clearly intended to "prompt the listener to respond in a way that facilitates the carrying out of criminal activity," and are therefore admissible as co-conspirator statements for this reason, as well. *United States v. Beech-Nut Nutrition Corp*., 871 F. 2d 1181, 1199 (2d Cir. 1989).

Here, the defendant and Bonilla were part of the same conspiracy; for example, the Court has already ruled that evidence relating to Bonilla's involvement in a murder at the direction of the defendant's brother, Tony Hernandez, is admissible as "evidence of the operations of the conspiracy, and it bears on the nature, structure, roles in the conspiracy." (Dkt. 671 at 9-10). These conversations are thus plainly in furtherance of the charged narcotics and firearms conspiracies, of which the defendant and Bonilla were members. *See, e.g.*, *Simmons*, 923 F.2d at, 945 (statements meant to "provide reassurance, serve to maintain trust and cohesiveness among them, or inform each other of the current status of the conspiracy" are in furtherance of the conspiracy).

**2. Four Audio Calls between Members and Associates of MS-13 are Admissible**

As referenced in the Government's January 19, 2024 letter, (*see* Dkt. 664 at 2), the Government also seeks to offer portions of certain audio calls that were lawfully intercepted by Honduran authorities in or around 2015 in connection with a Honduran investigation into MS-13, and specifically, Mendoza. The relevant portions of these calls, which are between Mendoza and other members and associates of MS-13 [REDACTED], are admissible as co-conspirator statements pursuant to Rule 801(d)(2)(E) and are summarized below and referenced by their Government Exhibit number:[6]

1. **GX 403.** On or about June 5, 2015, Mendoza and an unidentified female ("CC-1") had a call during which Mendoza discussed that the defendant's presidency was not going to last for much longer because a phone conversation had been intercepted with "Bonilla" [*i.e.*, Tigre Bonilla] during which it was discussed that the defendant had received millions of dollars from Hector Emilio and the *Valles*.

2. **GX 404.** On or about June 19, 2015, Mendoza and Campbell had a call during which Mendoza told Campbell, in sum and substance, that the defendant had assigned an elite team of police to try to kill a drug trafficker, Bayron Ruiz, who had worked with the defendant and his brother, Tony Hernandez, in order to prevent that trafficker from being arrested by U.S. authorities and potentially exposing them if he chose to cooperate against them.

3. **GX 405.** On or about September 29, 2015, Mendoza, Campbell, and Anwar had a call during which they discussed that the *Cachiros* were now in custody in New York and were playing a "cat and mouse" game because they had given up all the "routes" that "the President" (i.e., the defendant) had given them as part of "the deal."

4. **GX 406.** On or about November 18, 2015, Mendoza, Anwar, and others had a call in which they discussed, in sum and substance, a particular route that they could use to send money and other items in trucks across the border and stated that "Tigre Bonilla" previously had let "contraband" cross the border for $5,000.

For substantially the same reasons as those discussed above with respect to statements the Government seeks to offer [REDACTED], each of the portions of the intercepted audio calls described above is admissible pursuant to Rule 801(d)(2)(E). As described above, MS-13 worked with members of the charged conspiracy, including Bonilla and members of the *Cachiros* and *Valles* DTO, to traffic drugs. The participants on these four calls, who include Mendoza, Campbell, and Anwar, are thus the defendant's co-conspirators, satisfying the requirement that the statement(s) be made by a member of the conspiracy. *See* Fed. R. Evid. 801(d)(2)(E).

---

[6] The Government has provided these marked audio calls to the defense, along with translations.

The substance of each of the calls also supports that they were made in furtherance of the charged conspiracies.

First, GX 403 is admissible under Rule 801(d)(2)(E). In GX 403, Mendoza described to CC-1 that the defendant's presidency might end soon because "Bonilla"—a reference to Tigre Bonilla—had been intercepted on another call discussing that the defendant had received millions of dollars in bribes from Hector Emilio and the *Valles*, Honduran drug traffickers. As described above, and in the Government's initial motions *in limine*, the Government expects that the evidence at trial will show that Bonilla and the *Valles* worked with the defendant and his co-conspirators to traffic narcotics throughout Honduras and into the United States and, in return, the defendant received bribes from the *Valles* for the defendant's first presidential campaign. The Government further intends to offer evidence that MS-13 and its gang members helped protect the defendant's co-conspirators and their drug trafficking activities. Mendoza's update to CC-1, therefore, was plainly meant to "apprise a co-conspirator of the progress of the conspiracy," *United States v. Rahme*, 813 F.2d 31, 36 (2d Cir. 1987), and to advise CC-1 that the defendant's administration, and the protection for their drug trafficking activities, may soon come to an end.

Second, in GX 404, Mendoza provided Campbell with an update on the status of the conspiracy; in particular, that the defendant had arranged for a particular drug trafficker, Bayron Ruiz, to be killed so that he would not be arrested and cooperate with U.S. authorities, thereby exposing the defendant and his brother, Tony Hernandez, to criminal liability.[7] On its face, this conversation, in which Mendoza described that Ruiz had worked with the defendant and his brother, and the defendant's efforts to ensure that the conspiracy's operations were not exposed, was plainly meant to "apprise a co-conspirator of the progress of the conspiracy," *Rahme*, 813 F.2d at 36, and also to identify members of the conspiracy, *see, e.g.*, *United States v. Delligatti*, No. 15 Cr. 491, 2018 WL 1033242, at *6 (S.D.N.Y. Feb. 23, 2018) ("[S]tatements that convey information about others in the same organized crime syndicate are considered to be during and in furtherance of a conspiracy."). Moreover, this intercepted conversation was exchanged and discussed by two other members of the conspiracy, Geovanny Fuentes Ramirez and "Comisionado Martinez," a corrupt former Honduran National Police official. More specifically, in electronic communications between Fuentes Ramirez and Martinez, which took place on or about February 25, 2020 and which the Government introduced at the *Fuentes Ramirez* trial and the Court already ruled are admissible at this trial, (*see* Dkt. 554 at 88-90; Dkt. 671 at 30-31), the two discuss how the wiretaps became public and Martinez sent Fuentes Ramirez a voice note containing a portion of GX 404. In discussing the call, Martinez said "it's a shitshow," to which Ramirez responded, "Yes, it's going to be a disaster. It's going to be a f*cking disaster." This conversation between co-conspirators, approximately five years after the date of GX 404 and when that intercepted call became public, further demonstrates the connection between what is discussed on this call and the conspiracy, particularly given that Fuentes Ramirez and Martinez are discussing the negative impact that this call could have on the conspiracy itself.

[7] On March 30, 2017, Ruiz was charged in the Eastern District of New York with cocaine importation and firearms charges. *See United States v. Ruiz*, 17 Cr. 172 (ILG), Dkt. 1 (Mar. 30, 2017). Ruiz pled guilty to the charges in his indictment and was sentenced on September 10, 2021 to five years' imprisonment. (*See id*. at Dkt. 55, 56.)

Third, GX 405 is admissible for similar reasons. In GX 405, as described above, members and associates of MS-13 were discussing the status of the *Cachiros*, who had been taken into custody in the United States, and they appear to be referencing drug routes that "the President," (i.e., the defendant), had previously given to the *Cachiros* as part of their "deal." As described in the Government's prior motions *in limine*, the *Cachiros* paid bribes to the defendant to obtain control of certain drug routes. The reference to a "cat and mouse" game appears to be a reference to the *Cachiros*' cooperation. Here, too, the purpose of the call was plainly to provide an update on the status of the conspiracy to members of MS-13 and to "convey information about others in the same organized crime syndicate." *Delligatti*, 2018 WL 1033242, at *6.

Fourth, GX 406 is also admissible under Rule 801(d)(2)(E) because it is between members of the conspiracy discussing how to send trucks with contraband across the Honduran border. In doing so, the participants identify Bonilla as an individual that would previously permit contraband to cross the border in exchange for money. These statements, which concern how the gang would get contraband from one place to another and who the gang could rely on for that purpose, were therefore intended to "prompt the listener to respond in a way that facilitates the carrying out of criminal activity." *Beech-Nut Nutrition Corp*., 871 F. 2d at. Indeed, by identifying Bonilla as a corrupt officer who had previously assisted MS-13 (                                                                                        ), members of the conspiracy could know who to trust to carry out their criminal activity. These statements were thus clearly in furtherance of the conspiracy.

Finally, each of the portions of the calls summarized above is highly probative and their probative value far outweighs any potential for unfair prejudice that may result from their admission. The defendant is charged with participating in a large-scale international drug conspiracy that involved the highest levels of Honduran government and law enforcement officials who conspired with drug traffickers to send drugs to the United States. The first two calls, which squarely relate to the defendant's involvement in the charged drug conspiracy, could not be more probative: GX 404 concerns the defendant's efforts to conceal his involvement in the drug conspiracy by attempting to kill a drug trafficker that could cooperate with U.S. authorities and GX 405 concerns drug routes that the defendant had given to the *Cachiros*. GX 406, which concern's Bonilla's involvement in accepting corrupt payments to abuse his official position and allow contraband to cross the border, also directly implicates Bonilla—a former Chief of the Honduran National Police, who the Government alleges committed a murder to protect Tony Hernandez's drug territory—in precisely the type of conduct alleged by the Government that facilitated this drug conspiracy. As such, the probative value of each of these calls is significant. On the other hand, the potential for unfair prejudice is minimal, particularly given the other evidence the jury will hear in this case concerning murders carried out in furtherance of the drug conspiracy, including by cooperating witnesses, and corrupt payments made to high-level government officials. *See, e.g.*, *United States v. Miller*, 116 F.3d 641, 682 (2d Cir. 1997) (evidence of uncharged violent acts not unfairly prejudicial); *see also* Dkt. 671 at 9-10, 25-26 (finding that evidence of bribes paid to protect drug shipments is admissible and also that "evidence that Bonilla murdered Victim-1 at Tony Hernandez's direction" is not "excludable under 403 because it's evidence of the operations of the conspiracy, and it bears on the nature, structure, roles in the conspiracy"). As such, in addition to being admissible under the hearsay rules, these calls also unquestionably pass a Rule 403 balancing test.

Accordingly, for the reasons set forth above, the Government respectfully requests that [redacted] the Court, in advance of trial, find that the statement and calls described above are admissible at trial.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: /s/
Jacob H. Gutwillig
David J. Robles
Elinor L. Tarlow
Kyle A. Wirshba
Assistant United States Attorneys
(212) 637-2215 / -2550 / -1036 / -2493

Cc: Defense Counsel
(Via ECF and Email)