O37HHer1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

       v.                       15 Cr. 379 (PKC)

JUAN ORLANDO HERNANDEZ,

                               Trial
          Defendant.

------------------------------x

                               New York, N.Y.
                               March 7, 2024
                               10:05 a.m.

Before:

               HON. P. KEVIN CASTEL,

                        District Judge

                 APPEARANCES

DAMIAN WILLIAMS
    United States Attorney for the
    Southern District of New York
BY:  KYLE A. WIRSHBA
    JACOB GUTWILLIG
    ELINOR TARLOW
    DAVID ROBLES
    Assistant United States Attorneys

RENATO CHRISTIAN STABILE
RAYMOND L. COLON
SABRINA P. SHROFF
    Attorneys for Defendant

Also Present:   Francisco Olivero, Interpreter (Spanish)
                Gabriel Mitre, Interpreter (Spanish)
                Matthew Passmore, Special Agent

(Trial resumed; jury present)

THE COURT:  Please be seated.

Good morning, ladies and gentlemen.  I'm going to state the obvious to you.  I'm just going to plow into this, as we always do, and the fact that a portion of the charge was delivered to you last night, and I'm continuing it this morning, does not mean that yesterday's portion is of any greater or lesser importance than what I give you now.  OK?

So in your deliberations and in reaching your verdict, you must consider each count separately and determine whether the government has carried its burden of proof with respect to that charge.  I will provide you with a verdict form, and you will need to report the results of your deliberations on each count on the verdict form.  You will notice that the verdict form will —— and I'll have copies for each juror, although at the end of the trial, there's only one verdict sheet that will be filled out and signed by the foreperson, and I'll talk to you about that later on, but you'll each see what the verdict sheet says so that you know as you go along, and at various points, it says, if you've answered this question this way or that way, then you've completed your job, do not go on to the next question or the like.  So you'll see there are instructions on the verdict sheet, and you are to follow those instructions.

You may only find the defendant guilty of a particular

O37HHer1

count if the government has proven each element of the offense charged with respect to that count beyond a reasonable doubt.

The defendant, Juan Orlando Hernandez, has been formally charged in what is called an indictment. An indictment is simply an accusation. It is no more than the means by which a criminal case is started. It is not evidence. It's not proof of the defendant's guilt. It creates no presumption, and permits no inference that a defendant is guilty. You are to give no weight to the fact that an indictment has been returned against the defendant.

Before you begin your deliberations, you will be provided with a copy of the indictment. I will first summarize the offenses charged, and then explain them in detail.

There are three counts, or charges.

Count One charges the defendant with conspiring to violate the narcotics laws of the United States by entering into an agreement to engage one or more of the following types of conduct: First is importing cocaine into the United States; second is manufacturing or distributing cocaine knowing or intending that it would be imported into the United States; and the third is possessing cocaine with intent to distribute, or manufacturing or distribute cocaine, on board an aircraft registered in the United States.

And I'll explain what the significance of those three elements are. I'm going to go into it in a little bit of

O37HHer1

detail, but that's the overview.

The second charge, Count Two, charges the defendant with using or carrying machine guns or destructive devices, or aiding and abetting the use or carrying of machine guns or destructive devices, during and in relation to the crime charged in Count One.

Count Three charges the defendant with conspiring to use and carry machine guns or destructive devices in connection with, and to possess machine guns or destructive devices in furtherance of, the crime charged in Count One.

Each of the three counts constitutes a separate offense or crime. You must consider each count of the indictment separately, and you must return a separate unanimous verdict as to each count separately. You'll note that there are circumstances under which you don't consider the second and the third count. It says on the verdict sheet that if you find the defendant not guilty of Count One, then you don't consider these two other counts.

Juan Orlando Hernandez has pleaded not guilty and is presumed innocent of all charges. You must consider each charge separately and determine whether the government has carried its burden of proof with respect to that charge. In order for you to convict the defendant of a charge, it is necessary for you to find that the government has proven each and every element of that specific charge beyond a reasonable

O37HHer1

doubt.

Now let me turn to Count One.

To sustain its burden of proof with respect to the charge of conspiracy contained in Count One, the government must prove beyond a reasonable doubt the following two elements, and I'm going to explain the two elements after I tell you what they are:

First, that the conspiracy charged in Count One existed. In other words, that from at least in or about 2004 up to and including in or about 2022, there was an agreement or understanding between two or more persons to engage in one or more of the following types of conduct: Import a controlled substance into the U.S.; manufacture and distribute a controlled substance, knowing or intending that the controlled substance would be imported into the U.S.; possess a controlled substance with intent to distribute, and manufacture and distribute a controlled substance, on board an aircraft registered in the U.S.

That's the first element.

The second element is that the defendant knowingly and intentionally associated himself with, and joined in, the conspiracy with knowledge of one of its unlawful purposes.

What is a conspiracy? A conspiracy is an agreement or an understanding between two or more persons to accomplish by joint action a criminal or unlawful purpose. It is an unlawful

agreement to violate the law.  The success or failure of a conspiracy is not material to the question of guilt or lack of guilt of the defendant, for a conspiracy crime is entirely separate and distinct from a substantive crime that may be the goal of the conspiracy.  The crime of conspiracy is complete once the defendant enters into an unlawful agreement.

When people undertake to enter into a criminal conspiracy, much is left to unexpressed understanding. Conspirators do not usually reduce their agreements to writing, nor do they publicly broadcast their plans.  Express language or specific words are not required to indicate assent or attachment to a conspiracy.  From its very nature, a conspiracy is almost invariably characterized by secrecy, which makes detection difficult.

You need only find that the defendant entered into the unlawful agreement in the indictment with one or more other persons in order to find that a conspiracy existed.

The object of a conspiracy is the illegal goal that the coconspirators agree or hope to achieve, and I've already mentioned the three objects.  I'm not going to repeat them a third time.

The government does not have to prove all three objects charged.  Rather, proof beyond a reasonable doubt an agreement to accomplish any one of the three objects of the alleged conspiracy is sufficient.  You must be unanimous as to

which object you find the defendant guilty of participating in the conspiracy with respect to.  That is, you must all be in agreement with respect to at least one of the alleged objects of the conspiracy charged in Count One.

With respect to the second object, the distribution or manufacture of a controlled substance with the intent or knowledge that some of the controlled substance would be imported into the United States, it is not necessary for the government to prove that the conspiracy had as its object both the distribution and the manufacture of a controlled substance. It is sufficient if you find that the conspiracy was aimed at either the manufacture or the distribution of a controlled substance with the intent or knowledge that some of it would later be imported into the United States.  Here, too, you must be unanimous as to which of these objectives, manufacture or distribution or both, the conspiracy had.

With respect to the third object, the manufacture or distribution or possession with intent to distribute a controlled substance on board an aircraft registered in the United States, it is not necessary for the government to prove that the conspiracy had as its object the manufacture and distribution of a controlled substance, as well as the possession of a controlled substance with intent to distribute. It is sufficient if you find that the conspiracy was aimed at any one of those objectives on board an aircraft registered in

the United States.  Here, too, you must be unanimous as to which of these objectives — manufacture, distribution, or possession with intent to distribute, or all three — the conspiracy had.

So that's with regard to the second and the third object.

Now, I instruct you that cocaine is a controlled substance.  The purity of the narcotics involved is not an element of the crime charged, so you need not be concerned with that.  I also instruct you that the defendant need not know the exact nature of the drug.  Also, in considering whether a conspiracy existed, you need not consider whether the government has proved that a particular quantity of a controlled substance was involved in the charged conspiracy.

Now let me define some of the words that I've used.

The term "import" has its common everyday meaning, namely, to bring or introduce something into an area of the United States.  To import a substance means to bring or transport a substance into the United States from someplace outside the United States.

The word "distribute" means the actual, constructive, or attempted transfer of a controlled substance.  To distribute simply means to deliver, to pass on, to hand over something to another person, or to cause it to be delivered, passed on, or handed over to another.  Distribution does not require a sale,

but includes sales.

To "manufacture" a controlled substance simply means to produce, prepare, or process it, or to engage or participate in a process that results in the production of the controlled substance.

The word "distribution" means the process of actual, constructive, or attempted transfer of a controlled substance, including sale. Distribution does not require a sale, but includes sales.

The concept of "possession" may differ from the everyday usage of the term. Actual possession is what most of us think of as possession — that is, having physical custody or control of an object as I have possession of this pen. However, a person need not have actual physical possession, that is, physical custody of an object, in order to be in legal possession of it. If a person has the ability to exercise substantial control over an object, even if he or she does not have the object in his physical custody, and that person has the intent to exercise such control, then the person is in possession of that object. This is called "constructive possession."

Control over an object may be demonstrated by the existence of a working relationship between one person having the power or ability to control the item and another person who has actual physical custody. The person having control

possesses the narcotics because he or she has an effective working relationship with the person who has actual physical custody of the narcotics and because he or she can direct the movement or transfer or disposition of the narcotics.  In addition, an individual may have possession of an item that is not found on his person because that individual has a relationship to the location where the item is maintained.  In this matter, for example, a businessperson may possess things that are scattered throughout a number of stores or offices or installations around the country.

More than one person can have control over the same narcotics.  The law recognizes that possession may be joint or sole.  If one person alone has actual or constructive possession of a thing, possession is sole.  If more than one person has possession of it, as I've defined possession for you, then possession is joint.  That's what's meant by "possession."

Finally, possession and ownership are not the same.  A person can possess an object and not be the owner of an object.

Now let me give you some examples of possession, and the term "possession" comes up in the second and — it comes up in the third object of the conspiracy.

So I'm going to go back.  The first object is importation of a controlled substance from a place outside the United States into the United States; the second object is the

O37HHer1

manufacture or distribute of a controlled substance with possession or intent that some of the controlled substance would be unlawfully imported into the United States; and the third object is the possession of a controlled substance with intent to distribute, or the manufacturing or distribution of a controlled substance, on board an aircraft registered in the United States.

Now, let me give you some examples of possession.  I gave you the one with regard to physically possessing the pen.  Another example, let's say I brought some candy in — usually it's Flo who brings candy or cough drops in — and left it on Flo's desk.  Flo knows that she can't eat all the candy; she better leave some for me.  I do not physically possess the candy, but I do have control over it.  Flo also has control over it.  I can be said to possess the candy jointly with Flo.

One more example.  Say my uncle left me a wristwatch when he died, and it's now sitting in a safe deposit box at the bank.  My siblings and I know that we are the only people who can get into that box.  Do we have possession of the watch? Absolutely, we have possession of it, even though it's in a safe deposit box inside a bank and not in our hands or even in our homes.

If you find that a person knowingly possessed a controlled substance, then you must decide whether the person intended to distribute it.  Possession with intent to

distribute simply means the possession of a controlled substance with the intention or purpose to distribute it to another person or persons.  As I explained, distribute simply means to transfer to another.

Often it is possible to determine whether someone had an intent to distribute from the quantity of drugs that were possessed, although the possession of a large quantity of narcotics does not necessarily mean that an individual intended to distribute them.  On the other hand, an individual may have intended to distribute a controlled substance even if he did not possess a large quantity of it.

I also instruct you that defendant need not know the narcotics would be or were possessed on board an aircraft that was registered in the United States.  If the government proves that an aircraft used or intended to be used in the conspiracy was registered in the United States, that is enough.

Now, if you conclude that the government has proven beyond a reasonable doubt the existence of the conspiracy charged in Count One, then you must next determine whether defendant participated in the conspiracy with knowledge of its unlawful purpose and in furtherance of its unlawful objective or objectives.

The government must prove beyond a reasonable doubt that the defendant intentionally entered into the conspiracy with a purpose to promote and cooperate in one or more of its

O37HHer1

unlawful objectives.

An act is done knowingly and intentionally if it is done deliberately and purposely. That is, a defendant's acts must have been the product of the defendant's conscious objective rather than the product of a mistake or accident, mere negligence, or some other innocent reason. The fact that the acts of a defendant, without his knowledge, merely happened to further the purposes or objectives of the conspiracy does not make the defendant a member of the conspiracy.

Now, science has not yet devised a manner of looking into a person's mind and knowing what the person is thinking. I think I told you during jury selection, I hope that never happens. However, you do have before you evidence of certain acts, conduct, and conversations. The government contends that the defendant's acts, conduct, and conversations show beyond a reasonable doubt the defendant's knowledge of the unlawful purpose of the conspiracy. By pleading not guilty, the defendant denies that he committed the charged offense. It is for you to determine whether the government has proven, beyond a reasonable doubt, the defendant's knowledge and intent.

It is not necessary for the defendant to have been the owner of, or responsible for, the controlled substance that was intended to cross the United States border. Other individuals or organizations may be the owner or responsible for the narcotics intended to cross the border, but the defendant may

nonetheless be guilty of conspiring to distribute or manufacture the narcotics with knowledge or intent that they be imported if the government proves the elements of Count One as I'm explaining them to you.

It is not necessary for the government to show that the defendant was fully aware of every detail of that conspiracy or that the defendant knew every other member of that conspiracy. A defendant may know only one other member of that conspiracy and still be a coconspirator. It is also not necessary for a defendant to receive any monetary benefit from his participation in that conspiracy or to have a financial stake in the outcome. It is enough if he participated in that conspiracy intentionally and knowingly.

The duration and extent of a defendant's participation in the conspiracy charged in Count One has no bearing on the issue of the defendant's guilt. A defendant need not have joined the conspiracy at the outset. He may have joined it at any time in its progress, and he will still be held responsible for all that was done before he joined and all that was done during that conspiracy's existence while he was a member. Each member of a conspiracy may perform separate and distinct acts. Some conspirators play major roles, while others play minor roles. An equal role is not what the law requires. Even a single act may be sufficient to draw a defendant within the scope of the conspiracy.

However, a person's mere presence at the scene of a crime does not by itself make him a member of the conspiracy. Similarly, a person's mere association with a member of the conspiracy does not make that person a member of the conspiracy even when that association is coupled with knowledge that a conspiracy exists.

What is necessary is that a defendant participated in the conspiracy with knowledge of its unlawful purpose and with an intent to aid in the accomplishment of its unlawful objective or objectives. That's what's necessary for the government to prove by proof beyond a reasonable doubt.

A conspiracy, once formed, is presumed to continue until either its objective is accomplished or there is some affirmative act of termination by its members. So, too, once a person is found to be a member of a conspiracy, he is presumed to continue his membership in the venture until its termination, unless it is shown by some affirmative proof that he withdrew and disassociated himself from it.

The conspiracy charged in Count One is alleged to have existed from in or about 2004 up to and including in or about 2022. It is not essential that the government prove that the conspiracy alleged started and ended on any specific date. It is sufficient if you find that the conspiracy was formed and it existed for some time around the dates that I just mentioned.

When people enter into a conspiracy to accomplish an

O37HHer1

unlawful end, they become agents or partners of one another in carrying out the conspiracy. Accordingly, the reasonably foreseeable acts or statements of any member of the conspiracy, committed in furtherance of the common purpose of the conspiracy and during the conspiracy, are deemed under the law to be the acts or statements of all of the members of the conspiracy, and all of the members of the conspiracy are responsible for such acts or statements. This rule applies even though such acts or statements were not made or committed in the defendant's presence or made or committed without his knowledge.

If, and only if, you find that the government has proved beyond a reasonable doubt that the defendant is guilty of participating in the conspiracy charged in Count One, you must then determine the type of controlled substance involved in the conspiracy and its weight.

You'll be provided, as I said, with a verdict form that will include spaces for you to indicate your determination as to drug type and quantity.

The government has alleged that cocaine was the controlled substance involved in the conspiracy charged in Count One. And as I've already told you, I instruct you as a matter of law that cocaine is a controlled substance. The government need not prove the purity of the cocaine — any mixture or substance containing a detectable amount of cocaine

O37HHer1

is sufficient.

Now, drug quantity.

You need not determine the precise quantity of cocaine. Instead, if you reach the question of quantity, indicate on the verdict form whether the government has established beyond a reasonable doubt that the conspiracy involved five kilograms or more of mixtures and substances containing a detectable amount of cocaine. Your finding on quantity must be unanimous in the sense that all of you must agree that the conspiracy involved at least the quantity you indicate. Only if you all agree that the conspiracy involved five kilograms or more of cocaine should you mark that finding on the verdict form.

Let me look at the verdict form.

So the question on Count One, it simply asks whether you find the defendant guilty or not guilty on Count One. That's the question. And if, but only if, you have found the defendant guilty on Count One, then you respond to the following questions: Has the government proven beyond a reasonable doubt that the offense charged in Count One involved mixtures or substances containing a detectable amount of cocaine? And then the question is answered yes or no. And the next question is: Has the government proven beyond a reasonable doubt that the offense charged in Count One involved five or more kilograms or mixtures of substances containing

cocaine?  And the answer is either yes or no.

All right.  Now, in making your determination about quantity, you should include whatever quantity of cocaine was involved in any act or acts in which the defendant personally and directly participated, and if you find that the defendant personally or directly participated in a jointly undertaken drug transaction, he is responsible for the full quantity of the drugs involved in that transaction.

In addition, in making your determination about quantity, you should also include any other quantity of cocaine involved so long as that quantity was either known to the defendant or reasonably foreseeable to him and within the scope of the conspiracy.  Reasonably foreseeable means that the defendant could have reasonably anticipated the type and quantity of drugs involved in the conspiracy.

Now, as the verdict sheet tells you, if you have found the defendant not guilty on Count One, then your work is completed, and your foreperson signs and dates the verdict sheet.  If you have found the defendant guilty on Count One, then you proceed to Count Two.

Count Two charges the defendant with using and carrying machine guns or destructive devices in connection with, as well as aiding and abetting the possession of machine guns or destructive devices in connection with, the drug trafficking crime charged in Count One of the indictment.

Specifically, Count Two charges that from at least in or about 2004 up to and including in or about 2022, the defendant, during and in relation to the narcotics importation conspiracy charged in Count One, knowingly used and carried firearms in furtherance of the conspiracy.  Count Two also charges the defendant with aiding and abetting the use, carrying, and possession of those firearms, specifically including machine guns that were capable of automatically shooting more than one shot without manual reloading by a single function of the trigger, as well as destructive devices.

In order to convict the defendant of Count Two, the government must prove the following elements beyond a reasonable doubt:

First, that the defendant committed the drug trafficking crime charged in Count One of the indictment. Therefore, if you conclude that the defendant's guilt has been proven beyond a reasonable doubt as to Count One, then this element has been satisfied.  If the government has not met the burden of proof as to Count One, this element has not been satisfied.

The second element is that the defendant knowingly used or carried a firearm during and in relation to the drug trafficking crime charged in Count One, or possessed a firearm in furtherance of that drug trafficking crime charged in Count One, or aided and abetted another in such use, carrying,

O37HHer1

or possession of a firearm.

I will define for you certain terms related to the second element of Count Two.

In order to prove that the defendant used machine guns or destructive devices, the government must prove beyond a reasonable doubt an active employment of a machine gun or a destructive device by the defendant during and in relation to the commission of a drug trafficking crime.  This does not mean that the defendant must actually fire or attempt to fire the machine gun or destructive device, although those would obviously constitute use of machine gun or destructive device. Brandishing, displaying, or even referring to the machine guns or destructive devices so that others present may know that the defendant has the machine gun or the destructive device available, if needed, all constitute use of a machine gun or a destructive device.  The mere possession of a machine gun or destructive device at or near the site of the crime without active employment as I've just described it is not, however, sufficient to constitute use of a machine gun or destructive device.

In order to prove that the defendant carried a machine gun or a destructive device, the government must prove beyond a reasonable doubt that the defendant had a machine gun or a destructive device within his control so that it was available in such a way that it furthered the commission of the crime.

O37HHer1

The defendant need not have held the machine gun or the destructive device physically, that is, have had actual possession of it on his person.

If you find the defendant had dominion and control over the place where a machine gun or a destructive device was located, and had the power and intention to exercise control over that machine gun or destructive device, and that the machine gun or destructive device was immediately available to him in such a way that it furthered the commission of the drug trafficking crime charged in Count One, you may find that the government has proved the defendant carried the machine gun or destructive device.

"Possess."

I have previously defined the word possess and possession, and those instructions apply here. I will also add that possession of a machine gun or a destructive device in furtherance of a drug trafficking crime requires that the defendant possess the machine gun or destructive device and that the possession advanced or moved forward the crime. The mere presence of a machine gun or destructive device is not enough. Possession in furtherance requires that the possession be incident to and an essential part of the crime. A machine gun or destructive device must have played some part in furthering the crime in order for this element to be satisfied.

Finally, I advise you that the fact that a defendant

O37HHer1

had a license to carry a firearm is not a defense to Count Two.

I will now instruct you on the concept of aiding and abetting as it applies to Count Two.  Under the relevant federal statute, one way that a defendant may be found guilty of the crime in Count Two is if the defendant aided and abetted the commission of the crime by another person.  A person who aids and abets another to commit an offense is just as guilty of that offense as if he had committed it himself.  Therefore, if you find that the government has proven beyond a reasonable doubt that another person actually committed a crime charged in Count Two, and that the defendant aid and abetted that person in the commission of the offense, then you may find the defendant guilty of that crime.  Obviously, no one can be convicted of aiding and abetting the criminal acts of another if no crime was committed by the other person.  But if you do find that a crime was committed, then you must consider whether the defendant aided or abetted the commission of the crime.

In order to aid and abet another to commit a crime, it is necessary that the defendant willfully and knowingly associated himself in some way with the crime, and that he willfully and knowingly sought by some act to help make the crime succeed.  Participation in a crime is willful if action is taken voluntarily and intentionally or, in the case of a failure to act, with a specific intent to fail to do something that the law requires to be done — that is to say, with a bad

O37HHer1

purpose either to disobey or to disregard the law.

The mere presence of the defendant where a crime is being committed, even when coupled with knowledge by the defendant that a crime is being committed, is not sufficient to make the defendant guilty as an aider and abettor, nor is it sufficient that the defendant is associated with the person who committed a crime.  In order for the defendant to be found guilty of the offense as an aider or abettor, he must know of the criminal activity, and he must actually take some action intending to help the crime succeed.

Another way a defendant may be found guilty of aiding and abetting the criminal acts of another is if the defendant intentionally caused another person to physically commit the crime.  Specifically, the statute provides that whoever willfully causes an act to be done, which if directly performed by him or another, would be an offense is punishable as a principal.

Thus, as to Count Two, if the defendant intentionally caused another to possess a machine gun or destructive device during and in relation to, or in furtherance of, the drug trafficking crime charged in Count One, then the defendant is guilty of the crime charged in Count Two just as if he had physically committed the crime himself.

Finally, you may also find the defendant guilty of aiding and abetting the crime charged in Count Two if you find

that he actively participated in the drug trafficking crime in Count One with advance knowledge that another participant in the crime would use or carry a machine gun or destructive device during and in relation to, or possess a machine gun or a destructive device in furtherance of, that crime.  Advance knowledge means knowledge at the time the defendant can attempt to alter the plan or withdraw from it.  Knowledge of the machine gun or destructive device may, but does not have to, exist before the underlying crime is begun.  It is sufficient if the knowledge is gained in the middle of the underlying crime so long as the defendant continues to participate in the crime and has a realistic opportunity to withdraw from it.  You may, but need not, infer that the defendant has sufficient knowledge if you find that the defendant continued his participation in the crime after learning about the use, carrying, or possession of a machine gun or destructive device by a confederate.

If, and only if, you find the government has proved beyond a reasonable doubt that the defendant is guilty of committing or aiding and abetting the commission of the firearms offense charged in Count Two, you must determine whether the offense involved a machine gun or destructive device.  The verdict form will include spaces for you to indicate your determination as to the firearm type on Count Two.  A machine gun is any weapon which shoots, is

designed to shoot, or can be readily restored to shoot automatically more than one shot without manual reloading by a single function of the trigger.

The term destructive device includes any explosives, bomb, or grenade, and any type of weapon other than a shotgun or a shotgun shell that will expel a projectile by the action of an explosive or other propellant and that has any barrel with a bore of more than one and a half inches in diameter. A bore is a hollow interior of the barrel of a gun.

Count Three is also a conspiracy charge. It charges that from at least in or about 2004 up to and including in or about 2022, the defendant agreed with others to use and carry a firearm during and in relation to the drug trafficking crime charged in Count One of the indictment, or to possess a firearm in furtherance of the drug trafficking crime charged in Count One.

Specifically, Count Three charges that from at least in or about 2004 up to and including in or about 2022, the defendant and others intentionally and knowingly combined, conspired, confederated, and agreed together and with each other to violate the federal laws prohibiting use or carrying firearms in furtherance of the narcotics importation conspiracy charged in Count One. The object of the conspiracy charged in Count Three is the knowing use and carrying of firearms, and the knowing possession of firearms, in furtherance of the

O37HHer1

narcotics importation conspiracy charged in Count One, including machine guns that were capable of automatically shooting more than one shot without manual reloading by a single function of the trigger, as well as destructive devices.

To sustain its burden of proof with respect to the charge of conspiracy contained in Count Three, the government must prove beyond a reasonable doubt the following two elements:

First, that the conspiracy charged in Count Three existed, in other words, that from at least in or about 2004 up to and including in or about 2022, there was an agreement or understanding between two or more persons to engage in one or more of the following types of conduct:  To use or carry a firearm during and in relation to the drug trafficking crime charged in Count One of the indictment, or to possess a firearm in furtherance of the crime charged in Count One;

Second, that the defendant knowingly and intentionally associated himself with and joined in the conspiracy.

I have already instructed you on the law of conspiracy, and you should apply those instructions with respect to Count Three.

I've also provided you with instructions on what it means to use or carry a machine gun or destructive device in relation to a drug trafficking crime, or possess a machine gun or destructive device in furtherance of that crime.  All of

those instructions apply here equally.

If, and only if, you find the government has proved beyond a reasonable doubt that the defendant is guilty of committing the firearms offense charged in Count Three, you must then determine whether the offense involved a machine gun or destructive device.  I instructed you on the meaning of the terms "machine gun" and "destructive device" in connection with Count Two, and these instructions apply equally for the special interrogatory on Count Three.  The verdict form will include spaces for you to indicate your determination as to firearm type on Count Three.

Now, that completes the instructions on the three counts, but I have additional instructions that apply to all of the counts.

Congress has determined that certain acts begun or committed outside the territorial jurisdiction of the United States are chargeable under U.S. law.  This applies to Counts One, Two, and Three of the indictment.  Thus, the government need not prove that the crime was committed in this district, the Southern District of New York, or that the defendant himself was present here.  Instead, with respect to venue, it is enough if you find that the point of entry where the defendant was first brought into the United States was in the Southern District of New York.

The parties have stipulated in Government

Exhibit 1010, that's GX 1010, that the defendant was first brought into the United States through Westchester County airport. I instruct you that Westchester County is in the Southern District of New York.

I further instruct you that on this issue, and this issue alone, the government need not prove venue beyond a reasonable doubt, but only by a preponderance of the evidence. Thus, the government has satisfied its venue obligation if you conclude that it is more likely than not that the venue is appropriate in this district.

You will note -- this is an additional instruction applicable to all counts.

You will note that the indictment alleges that certain acts occurred on or about various dates. It does not matter if the evidence you heard at trial indicates that a particular act occurred on a different date. The law requires only a substantial similarity between the dates alleged in the indictment and the dates established by the evidence.

Now, the possible punishment of a defendant in the event of conviction is not a proper consideration for the jury and should not, in any way, enter into or influence your deliberations. The duty of imposing sentence belongs to the judge and the judge alone. Your function is to weigh the evidence and to determine whether the defendant is or is not guilty upon the basis of evidence and the law. Therefore, I

O37HHer1

instruct you not to consider possible punishment in any way in your deliberations.

Now, there will be a laptop computer that will come into the jury room on which all the exhibits, whether offered by the government or by the defendant, those exhibits that have been received into evidence will be on this laptop. There is also a very simple index, a bibliographic index, a very brief description of what it is, whether it's a picture or a document, and document may be just a little it -- its title or what have you.

So you'll have that. The demonstrative exhibits will not go in the jury room.

If you want any testimony read back, send out a note specifying what you want to hear, and we'll bring you back to read it back for you. Please be as specific as possible in requesting portions of testimony.

If you want any further explanation of the law, as I've given it to you, you may also request that.

And, as I said, you'll have a copy of the indictment, and, as you know, the indictment is only an accusation. It's not evidence. It's not proof of anything.

Some of you have taken notes throughout the trial. Notes that you or any other juror has made may not be given any greater weight or influence in determination of the case than the recollections or impressions of other jurors, whether from

notes or memory, with respect to the evidence presented or what conclusions, if any, should be drawn from such evidence.  Any difference between a juror's recollection and another juror's notes should be settled by asking to have the court reporter read back the transcript, for it is the court record rather than any juror's notes upon which the jury must base its determination of the facts and its verdict.

In a few moments, you will retire to decide the case. It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement.  Each of you must decide the case for himself or herself, but you should do so only after consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is wrong or erroneous.

Your verdict must be unanimous, but you're not bound to surrender conscientiously held beliefs concerning the effect or weight of the evidence for the mere purpose of returning a verdict solely because of the opinion of other jurors.  Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt the conclusion that, in your good conscience, appears to be in accordance with the evidence and the Court's instructions on the law.

Please remember, you are not partisans.  You are judges, judges of the facts, not representatives of a

O37HHer1

constituency or cause.

If, at any point, you find yourselves divided, do not inform the Court of how the jurors are split.  Once you have reached a verdict, do not announce what that verdict is until I ask you to do so in the courtroom.

Once you get into the jury room, you must select a foreperson who will be responsible for signing all communications to the Court on behalf of the jury and to handing them to the deputy marshal during your deliberations.  This should not be assumed to mean that an individual cannot send the Court a note should the foreperson refuse to do so.

After you have reached a verdict, your foreperson will advise the deputy marshal outside your door that you have reached a verdict.  The foreperson fills out one copy of the verdict sheet, signs it as foreperson, and puts the date on it, and then puts it in an envelope and hands it to the deputy marshal indicating that the envelope contains the verdict.

I will stress that each of you must be in agreement with the verdict that is announced in Court.  Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

Your function now as jurors is to weigh the evidence in this case and determine whether the government has or has not proven beyond a reasonable doubt the guilt of Defendant Juan Orlando Hernandez with respect to each of the

three counts of the indictment.

You must base your verdict solely on the evidence, or lack of evidence, in the case and these instructions as to the law.  I am sure that if you listen to the views of your fellow jurors, and if you apply your own common sense, you will reach a verdict in accordance with the evidence and the law.

Finally, let me state that your oath as jurors, the oath you took at the beginning of the trial, sums up your duty, and that is without fear or favor to anyone, you will well and truly try the issues based solely upon the evidence, or lack of evidence, and the Court's instructions on the law.

Members of the jury, that concludes my instructions. You may quietly stand and stretch while I visit with the lawyers at the sidebar.  You cannot discuss the case while you're standing there.

(At sidebar)

THE COURT:  Anything from the government?

MR. WIRSHBA:  Yes, your Honor.  The government noticed two things:  With respect to page 33, your Honor was describing possession and returned to the objects of the conspiracy.  I believe your Honor said that possession or intent was one of the parts of the second object, and that second object is knowledge or intent.

THE COURT:  OK.  If I said that, that sounds wrong. It's not in the script.

MR. WIRSHBA:  Correct, your Honor.

THE COURT:  Right.

MR. WIRSHBA:  There's a second.

THE COURT:  Go ahead.

MR. WIRSHBA:  And the second thing is, with respect to page 37, which indicates that the defendant must knowingly and intentionally join the conspiracy, I think your Honor just missed one word and just said intentionally.

THE COURT:  OK.  Now let's just see.

MS. SHROFF:  On page 37.

THE COURT:  Let's go with 33 first, and then we're going to get 37.

Where on 33?

MR. WIRSHBA:  Your Honor, it wasn't in the script. You were returning to the objects of a conspiracy that referenced possession.

THE COURT:  So Count Two --

MR. WIRSHBA:  No, Count One.

THE COURT:  Count One.

MR. WIRSHBA:  Object two.

THE COURT:  Object two.

MR. WIRSHBA:  Your Honor said that possession or intent was required for that object.

THE COURT:  It's knowledge or intent.

MR. WIRSHBA:  Yes, your Honor.

O37HHER1

THE COURT:  Any objection to that?

MS. SHROFF:  No, your Honor.  I didn't even catch that.

THE COURT:  All right.  Wait a second now.

And on page 37, go ahead.

MR. WIRSHBA:  I don't know exactly where it is on the page, but, your Honor, it says defendant acted knowingly and intentionally, and I believe your Honor just said intentionally instead of knowingly and intentionally.  It's at the top.

MS. SHROFF:  It's the first line, your Honor.

THE COURT:  An act is done knowingly and intentionally, but is done deliberately and purposely.

MS. SHROFF:  Yes, your Honor.  I think you forgot knowingly.

THE COURT:  Pardon me?

MS. SHROFF:  You just forgot knowingly.

THE COURT:  Yes, that's fine.

And Ms. Shroff?

MS. SHROFF:  Yes, your Honor.  I just had one.

On Count Two, when the Court was reading the instruction in connection with the drug trafficking crime charged in Count One of the indictment, and then you said, I believe, if you -- if you have -- you may have -- you've already discussed the issue of drug trafficking in Count One if you've already found him -- if you found that element, that

element has been met.

THE COURT:  Yes.

MS. SHROFF:  But then there was -- I'm not sure if the Court did -- I really tried to take my notes the best I could, but if the element has not been satisfied, I think --

THE COURT:  I believe I said that.

MS. SHROFF:  You did.  But then my issue is that once that element has not been satisfied, there is a not guilty verdict, you don't go to Count Two.  You only get to Count Two if Count One, the element has been met, and that's in your verdict sheet.

THE COURT:  Hang on a second.

So I should not have instructed them in that way?

MS. SHROFF:  Right.

THE COURT:  First of all, that was not raised in the jury instructions, but it seems to me that there's no harm from that because you don't get to Count Two if you follow my instruction.

MS. SHROFF:  In the verdict sheet.

THE COURT:  And if you follow this instruction, you must find him not guilty on that.

MS. SHROFF:  I understand.  I'm just pointing that out.

THE COURT:  What do you want me to do?

MS. SHROFF:  I just wanted the language from the

O37HHER1

verdict sheet that -- that's -- I don't have the verdict sheet in front of me.  You have one line in the verdict sheet that you only get to this count if you find him guilty.

THE COURT:  I've said that already.

MS. SHROFF:  OK.  So, then, may I just ask, just because it's a little muddy, and the fault was ours for not raising it previously, that you instruct the jury to read the entire verdict sheet in its entirety because that's -- it's just like a --

THE COURT:  OK.  Let me see whether I can figure out a way to say what you want me to say, and you'll let me know if I get it right or wrong.

What else?

MS. SHROFF:  That's it.

MR. STABILE:  Your Honor, I have a different issue.

THE COURT:  Pardon me?

MR. STABILE:  I have a different issue that is not --

THE COURT:  All right.

MR. STABILE:  -- directly related to the jury instructions.

THE COURT:  Yes.

MR. STABILE:  But I'm just raising it at the first opportunity that I realized it.

THE COURT:  Yes.

MR. STABILE:  It's something that the government said

in its rebuttal summation, and --

THE COURT:  You could have raised it before I brought the jury in.

MR. STABILE:  I literally just realized it as you were instructing the jury.  So we can take it up now, or I don't know when the appropriate time to take it up is, but --

THE COURT:  Well --

MR. STABILE:  -- I literally just realized it.

THE COURT:  Yeah.  If the government -- I don't know what you're going to raise, but if the government said something bad, let's just say they said something bad, you were here yesterday when they said the bad thing, right?

MR. STABILE:  Yeah, I understand, your Honor.

THE COURT:  And you didn't pick it up then, and you're picking it up -- you're reading the transcript of their summation, and you're picking it up now.

MR. STABILE:  Correct, because I also had to refer back to the record and tie it to something that happened in the record.  So I'd like to make a record about what I think was said that was incorrect, and I'd also like to make a record about a proposed stipulation or instruction that I believe should be given to the jury at this point.  So I can make the record now, or I don't know how you want us to proceed.

THE COURT:  Listen, you waived the instruction if you don't make that request now.  So you better make it now.

MR. STABILE:  OK.  During --

MS. SHROFF:  Your Honor, I'm sorry, would the Court consider just excusing the jury for five minutes?

THE COURT:  No.

MS. SHROFF:  OK.

THE COURT:  No.

MR. STABILE:  During the government's rebuttal summation, the government said:  And you heard from the government's expert witness how the volume of cocaine through Honduras went up during the defendant's presidency from 2014 through 2022.  I believe that that statement is, in fact, false, and the government knows that that statement is, in fact, false.

THE COURT:  That the testimony was thus?

MR. STABILE:  The testimony was thus, but the fact itself is a false fact that the government double downed on in its rebuttal summation.

THE COURT:  All right.  Did the defendant have an opportunity to cross-examine that witness?

MR. STABILE:  Yes.  So could I read from the transcript of what happened with that witness --

THE COURT:  Sure.

MR. STABILE:  -- your Honor, just to make a record?

During the testimony of DEA expert, Jennifer Taul, I asked her on cross-examination — and this is page 614, lines 12

O37HHER1

to 21 — the question was:

"Q.  Well, just putting COVID aside, because that was -- so let's do between -- because you raise a good point, between 2014 and, let's say, 2019, did cocaine trafficking through Honduras go up or down?

"A.  Up.

"Q.  You say it went up between 2014 and 2019?

"A.  I believe so.

"Q.  What's your basis for saying that?

"A.  There are statistics reported by a number of different bodies, both private and governmental, DEA reporting mostly."

I believe that was false testimony, and Section 489 of the Foreign Assistance Act, I believe, of 1961 requires the International Narcotics Control Strategy Report to be released on March 1 of each year, and that report is supposed to report -- at the time that the report is required to be submitted each year, the Secretary of State, in consultation with appropriate United States government agencies, shall report to the appropriate committees of the Congress on the assistance provided, or proposed to be provided, by the United States Government during the fiscal year, the current fiscal year, and the next fiscal year, to support international efforts to combat --

THE COURT:  What are you reading from, Mr. Stabile?

MR. STABILE:  Section 489 of the Foreign Assistance

O37HHER1

Act.

THE COURT:  Why are you reading this to me now when I have you at the sidebar for exceptions to the charge?  Why are you reading the text of a statute?

MR. STABILE:  Because I'm just realizing this issue.

THE COURT:  So keep reading.  Go ahead, Mr. Stabile.

MR. STABILE:  I can give you the U.S.C. section.

THE COURT:  No, keep what you're doing.

MR. STABILE:  Oh, OK.

So, Section 2, information to be included:  Each report pursuant to this subsection shall — and I'm skipping ahead to portion B — include for each country identified in subsection (a)(3)(A) information from the Drug Enforcement Administration, the Customs service, and the Coast Guard describing in detail and partially, and subsection 1 says, the assistance provided, or to be provided, to such country by that agency and to the assistance provided, or to be provided, to that agency by such country.

So under that section, the International Narcotics Control Strategy Report that was issued in 2016, and this is by the State Department, and I'm citing from the introduction, according to U.S. estimates --

THE COURT:  Is this report in evidence?

MR. STABILE:  It is not.

THE COURT:  OK.  If it's not in evidence, why are you

reading to me from it?  A statute, I can understand.  That's a principle of law.

Now, let me ask you a question.  You referred to something that was said in closing by the government?

MR. STABILE:  Yes.

THE COURT:  Was that in Mr. Gutwillig's?

MR. STABILE:  No.  Ms. Tarlow's rebuttal.

THE COURT:  I'm sorry?

MR. STABILE:  Ms. Tarlow's rebuttal.

THE COURT:  Go ahead.

MR. STABILE:  Can I continue reading from this section?

THE COURT:  If you're reading from a document not in evidence, write me a letter about it because it's not in evidence.

MR. STABILE:  So, anyway, there are several reports along the same lines that drug trafficking through Honduras actually went down from 2014 to 2022.  I just want to put on the record that I did not make a strategic decision not to cross-examine Ms. Taul on that.  I made a mistake.  I overlooked these reports and this statute.  I did not have sufficient time to prepare to cross-examine her, and it was not a result of a strategic choice.  The testimony, I believe, was false and misleading.  Ms. Tarlow's doubling down on it in her rebuttal summation was false and misleading, and I would like

O37HHER1

either an instruction or stipulation from the government that, in fact, drug trafficking through Honduras went down between 2014 and 2022.

THE COURT:  Mr. Stabile, why did you -- why did you elect to cross-examine this witness?  You have -- there are three members of the trial team.

MR. STABILE:  We divided up the work, your Honor.

THE COURT:  OK.  All right.  So when did you locate this?

MR. STABILE:  It was brought to my attention starting last night and then this morning.

THE COURT:  How was it brought to your attention?

MR. STABILE:  An email.

THE COURT:  By whom?

MR. STABILE:  By the defendant's wife.

THE COURT:  OK.  All right.  Thank you very much.

Does the government want to respond?

MR. WIRSHBA:  Yes, your Honor.

Your Honor, this is ridiculous.  The defendant not only had an opportunity to cross-examine this witness, they had an opportunity to bring this to the government's attention at any time before the close of its evidence.  The defendant then had an opportunity to call any witnesses they wanted during their case, including potentially an expert who could cite to these statistics, if that would be appropriate.  They did not

elect to do so.  Mr. Stabile's claim that he's only realizing this now, when he has printed sheets with the statute, and he has printed sheets with the statistics, suggests that he knew about this earlier.  In fact, he did elect to cross-examine this witness about this issue.

And so the government believes that this is an outrageous thing to bring up at this time.  The defendant is not entitled to any sort of stipulation or instruction, and, clearly, Mr. Stabile knew that this issue existed because he sought to cross-examine the witness about it and didn't get the answers that he wanted.  He could have corrected it at any time between then and the close of evidence, and he elected not to do so.

MR. STABILE:  I did elect to ask the question.  I was surprised by the answer, and I was unprepared to confront her with these documents.

THE COURT:  Your application is denied.  First of all, I don't find a basis to conclude that you had an inopportunity to cross-examine this witness.

When was the 3500 material on this witness produced?

MR. ROBLES:  December 23, I believe -- I'm sorry, January 7.

THE COURT:  All right.

Obviously, you were of the view that you didn't think the evidence was -- you doubted the truth of the evidence, and,

O37HHER1

therefore, you cross-examined her on the point.  It would have been incumbent on you, Mr. Stabile, at that point to do something about it, like do your own research and raise it in a timely fashion, because the stipulation, ladies and gentlemen, we now have a stipulation that one of the witnesses called by the government testified untruthfully, that's what you want.

MR. STABILE:  That is not what I want.

THE COURT:  Oh, you just want it in like just the statistic so that the jury can then say, well, that's not what the witness said.  Just confuse the jury.  Is that what you want?

MR. STABILE:  No, your Honor, that's not what I want.

THE COURT:  Let me hear the words of the stipulation, sir.

MR. STABILE:  If you can give me one moment, please.

I would like a stipulation that reads as follows:

"The volume of cocaine through Honduras went down during the defendant's presidency from 2014 through 2022."

THE COURT:  Doesn't that contradict the testimony of the witness?

MR. STABILE:  It may.

THE COURT:  OK.  I want to just find out from you, you just said it may.  That doesn't sound accurate.

MR. STABILE:  I think it will contradict her testimony.

THE COURT:  Then why couldn't you say that in the first instance?

MR. STABILE:  Because she -- it may.  I have to look exactly at her testimony, but I suppose it does.

THE COURT:  Well, that's what I'm asking.  Didn't you just look at her testimony?

MR. STABILE:  Yes.  I can look at it again.

THE COURT:  I mean, Mr. Stabile, we're at the sidebar, and we have the jurors in the box here waiting to go in for deliberations, and I don't appreciate your equivocating on whether it may or it does.

MR. STABILE:  Well, now that I've reviewed the transcript again, I believe it does.

THE COURT:  OK.  Because you twice said it was may. First, you said it was may, then you said it does, then you said it may, and now you said it does.  I think that's what this record just shows.

MR. STABILE:  OK.  Well, I'm settling on does, now that I've reviewed her testimony.

THE COURT:  OK.  All right.

MS. SHROFF:  Your Honor --

THE COURT:  It would be highly prejudicial at this stage of the game.  You had the opportunity to bring this up at an earlier point in time, and you didn't while the evidence was open.  So your application is denied.

O37HHER1

MR. STABILE:  My second application -- can I make a second application?

THE COURT:  You can make five applications, I suppose. Go ahead.

MR. STABILE:  The application is to reopen the record.

THE COURT:  All right.  That application is denied. I've already charged the jury in this case.  It's highly prejudicial to do that, highly prejudicial.  And that's where we stand.

MR. WIRSHBA:  Your Honor, may I?

THE COURT:  Yes.

MR. WIRSHBA:  Your Honor, just to add to the record, I think that it is not entirely clear from the record what statistics Ms. Taul was relying on.  Just because the defendant has found a report that the government has never seen that says something different does not mean that the witness was not telling the truth.  And I will say that from where the government sits, this does seem to be strategic, on the defendant's part, in waiting to raise this until this time. That's all.

MS. SHROFF:  Your Honor, I just wanted to note that I apologize if we've been imprecise, but it is within this Court's discretion under *United States v. Crawford*, and I'm happy to give you the cite, which would be 533 F.3d 133, you have the discretion of -- I know --

O37HHER1

THE COURT:  I acknowledge the discretion.

MS. SHROFF:  Thank you, your Honor.

And, of course, to the extent that it was a failure on the part of the defense, Mr. Stabile has clearly laid out that he believes he wasn't effective in that portion of the cross-examination and seeks to rectify what appears to be an error on his part.

THE COURT:  Well, it seems to me that he's contradicted that viewpoint right here on this record here today by saying that he doubted the testimony when it was given, he cross-examined on it, and he didn't then check to see whether there was other material and seek to reopen the case or introduce the evidence in his case.

When did this witness testify, by the way?

MR. ROBLES:  Within the first week of the trial.

THE COURT:  Let the record so reflect that this witness testified -- what day of the --

MR. ROBLES:  I don't have --

THE COURT:  OK.  This trial started, the evidence started, on February 21, and it was -- we sat Tuesday, Wednesday, Thursday, Friday of that first week, and it is now being raised at the sidebar after the jury has been charged.

Mr. Stabile, you have had the ability to send letters at all hours after the Court has closed at night and on weekends, correct?

MR. STABILE:  Correct.

THE COURT:  All right.  And not only have you had the ability to do that, you have, in fact, done that.

MR. STABILE:  Correct.

THE COURT:  OK.  You have waived it, sir.

MR. STABILE:  But, your Honor, the government doubled down on it in their rebuttal summation, which I think heightens the prejudice.

THE COURT:  OK.  So I just want to know something.  If they hadn't alluded to it, would you have just kept this to yourself?

MR. STABILE:  Well, no, it was only brought to my attention both last night, and the documents that I have printed, I did not print; they were handed to me this morning.

THE COURT:  Yes, well, do you understand my question?

MR. STABILE:  I think it would have been prejudicial under any circumstances.  I think the prejudice was heightened when the government specifically referenced it in its rebuttal summation.

THE COURT:  All right.  Any reviewing court should understand this trial is coming up on -- this is Thursday of the third week of this trial.  The witness who testified, testified in the first week, and the questioning attorney has already said on this record that he had his doubts about the testimony when the witness testified.  So he's waived this on

behalf of the defendant, and strategic or otherwise.  So that's my ruling.

I have the discretion to accept the stipulation if the government were to agree to it.  I have the discretion to reopen the evidence, but, for the reasons stated, I decline to exercise that discretion.

Now, the next question is with regard to alternate jurors.  Who is going to speak for the defense on this?

MR. STABILE:  I can.

THE COURT:  With respect to alternate jurors, I propose to tell the three remaining alternate jurors that they can go back to their daily lives, but they're subject to the Court's instruction that they may not discuss the case among themselves with anyone, they may not do any research, because they are subject to recall as jurors.

Any objection, Mr. Stabile?

MR. STABILE:  No objection.

THE COURT:  Any objection from the government?

MR. WIRSHBA:  No, your Honor.

THE COURT:  All right.  Thank you very much.  Please stay here while I give the corrective instructions.

Here's the question I have:  The second object of the conspiracy is the manufacture or distribution of a controlled substance with the knowledge or intent that some of the controlled substance would be unlawfully imported into the

United States.  Is that correct?

MR. WIRSHBA:  That's correct, your Honor.

THE COURT:  And your point with regard to what I said on page 33 is what?

MR. WIRSHBA:  Your Honor, I think when you were hearkening back to it, you just said that possession was part of that second object.  I think your Honor just briefly misspoke.

THE COURT:  All right.

(In open court; jurors present)

THE COURT:  Ladies and gentlemen, I just want to make a few corrections in what I said to you.

The second object of the conspiracy is the manufacture or distribution of a controlled substance with the knowledge or intent that some of the controlled substance would be unlawfully imported into the United States.  The term "possession" relates to the third object, not the second object.

Also, at one point in the charge, I gave you an instruction on the terms "knowingly and intentionally."  And I want to say that an act is done knowingly and intentionally if it is done deliberately and purposely.  This is a defendant's acts must have been the product of the defendant's conscious objective rather than the product of a mistake or accident, mere negligence, or some other innocent reason.  The fact that

the acts of a defendant without knowledge merely happened to further the purposes or objectives of the conspiracy does not make the defendant a member.

I gave you further instructions on the terms "knowing" and "intentionally," and you should follow the balance of that.

With regard to Count Two, I told you that on Count Two, the government must prove that the defendant committed the drug trafficking crime charged in Count One of the indictment.  Therefore, if you conclude that the defendant's guilt has been proven beyond a reasonable doubt as to Count One, then this element has been satisfied.  Of course, if the government has not met its burden on Count One, then you won't be considering Count Two, because I've explained to you, you only reach Count Two and Three if you've found the defendant guilty on Count One.

You may return to your seats.

MS. SHROFF:  Thank you, your Honor.

(At sidebar)

THE COURT:  Any objections to any of that?

MS. SHROFF:  Not at all, your Honor.

MR. WIRSHBA:  Not from the government.

MS. SHROFF:  Thank you, your Honor.

(In open court; jurors present)

THE COURT:  So, ladies and gentlemen, at this point I am going to excuse our last three jurors, who are Jurors No. 16, 17, and 18.

Can you raise your hand, please.

All right.  Now, this is what I want you to know: You're still on jury duty, and that is something you have to take seriously, in that there are sets of facts under which you could be recalled to deliberate in this case.  Therefore, you must follow all the instructions that I gave you as a juror, and those include:  You may not discuss the case among yourselves or with anyone, you may not do any research or reading about the case, you have to tell me if anyone approaches you about the case, all of the instructions.  I just highlighted a few, but you remember the instructions because I've given them to you several times.  You must follow them.

My promise to you is, when this jury is discharged, you will receive a phone call from us telling you that, so then you will be relieved of those obligations.  You've sat here patiently throughout this trial.  I think you now realize why a

O37HHER1

court selects alternate jurors.  It can be that a contagious disease afflicts multiple jurors.  So it's not wasting anybody's time.  One alternate juror was excused, and two of the alternates are going to be deliberating, and it was just happenstance that that's the way it worked out.  But you should be proud of your service because without your service, trials of this length could not take place.

So, with that, we will stand for you as the three of you exit the courtroom, to pick up your belongings and exit the courtroom.  Thank you for your service.

(Alternate jurors were excused)

THE COURT:  Any objection from the government?

MR. STABILE:  No, your Honor.

MR. WIRSHBA:  No, your Honor.

THE COURT:  From the defendant?

MR. STABILE:  No, your Honor.

THE COURT:  Please be seated, ladies and gentlemen.

If the deputy marshal will step forward to take the oath.

(Marshal sworn)

THE COURT:  All right.  Ladies and gentlemen, we're now going to give you several copies of the Court's instructions and, as I indicated, a copy of the verdict sheet for each of you and a copy of the indictment, the trial indictment.

No, no, just give it to the first juror there, and then you can bring it into the jury room.

And as I told you, there may be a variance between the typed text and the words I spoke, and it's the words I spoke that control.

Ladies and gentlemen, you may now discuss the case among yourselves. Now, one thing here, you have more control over your schedule. So if your work is not done by the end of the day and you want to stay past 5:00, just send us a note, that's fine, and if it comes to pass that you're returning tomorrow, then you may not discuss the case until all 12 of you are present.

Thank you, ladies and gentlemen.

(At 11:30 a.m., the jury retired to deliberate)

THE COURT: Please be seated.

So I adhere to what I call the eight-minute rule, which is you either must have a member of the trial team in the courtroom or be in a position to return to the courtroom within eight minutes of a phone call from my deputy, which means you can't go back to your offices, because if we have a note, we're going to get to work on the note right away, and what I may do is — and I often do — is I'll look at the note, while you're looking at the note, and try and come up with a proposal for a response to the note. If it's searching for testimony, I'm probably going to be of very little use, and I'm going to rely

100 percent on counsel, but if it's a question of the law, I may try my hand at something, and then talk to you all. But it's important that we assemble quickly in the event there is such a note.

I want to say that I expressed my views on certain issues prior to the trial about what led up to the trial and the scheduling of the trial, and I stand by the words that I wrote in two orders, and I don't retract any of that. But I want to say that I thought the conduct of this trial by the prosecution and the defense team was done fairly and efficiently. I found the lawyers for the government and the lawyers for the defendant, by and large, to be easy to work with in the trial context and making good faith best efforts to move the case along, and I should say that when I talk about moving the case along, I happen to be of the view, and I believe others are of the view, that the greatest feature of our judicial system is citizen jurors deciding issues, not a person with a black robe, but jurors. And for that system to continue and thrive and be the centerpiece and the shining glory of our system, it's important that trials be conducted in a manner that makes it feasible for people in the 21st Century with busy lives to serve, and I believe that both sides during this trial worked hard to make that happen. And I want to express my appreciation to Ms. Tarlow, Mr. Wirshba, Mr. Robles, Mr. Gutwillig, Mr. Stabile, Mr. Colon, and Ms. Shroff for that

O37HHER1

happening.  So, thank you very much.  And we are adjourned till we hear from the jury.

And, of course, paralegals and others assisting the case.  Thank you.

MS. SHROFF:  Your Honor, of course, all of us, the government and the defense, would like to thank your two law clerks and Flo, and, you know, we all appreciate all of their help, and that of Pam and Raquel.  Thank you.

THE COURT:  Thank you.

Thank you.  And thank you to our interpreters, to Raquel, and to Pam, our great court reporters, for all their help.  To our deputy marshals, thank you, and our CSOs.

We're adjourned for now.

(Recess pending verdict)

(Continued next page)

O37KHER2

THE COURT:  Please be seated.

I don't know that I put on the record that the final charge was Court Exhibit 8, but it is, and you've received a copy of that.

There was Court Exhibit No. 9.:  "We have elected jury foreperson," and it says, "Jury No. 13" — I assume Juror 13 — and it's signed.

Then there is a note, Court Exhibit 10:  "We need markers that work."  And my deputy has provided markers that work.

Any objection with regard to those two notes?

MR. GUTWILLIG:  No, your Honor.

MS. SHROFF:  Not from the defense, your Honor.

THE COURT:  All right.  And they will have to be reminded that they need to sign their notes.

Now, have you seen Court Exhibit 11?

MR. GUTWILLIG:  Yes.

THE COURT:  I'll read it for the record.

Good.  I'm glad everybody has seen it.

"Did we get the right laptop?  We feel like there is evidence on it that we've never seen before; for example, GX 334, amongst others."

I believe GX 334 is in evidence; is that correct?

MR. GUTWILLIG:  That's correct, your Honor.

THE COURT:  Is that correct?

MS. SHROFF:  It is in evidence, your Honor.

THE COURT:  All right.

So what I can do is -- Flo, do we have the capability of printing here?

MS. SHROFF:  It might be that that particular exhibit was never published to the jury.  That's why they're sending --

THE COURT:  Right, right, right.

And the laptop was examined or available for examination by both sides before it went in.

It was prepared by the government and made available for inspection?

MR. GUTWILLIG:  That's correct, your Honor.

THE COURT:  All right.

So the easiest thing — and I will see whether you're onboard for this — is for me to respond, in sum or substance, that:  GX 334 was received in evidence.  Not all exhibits that are received in evidence are published to the jury.  If you have any other questions or concerns about any other exhibit, please send in a note.

And then I will say:  And please be sure that your notes, all of your notes, are signed and dated by the foreperson.

I'll read the actual text of it when I type it out, but is there any objection to the gist?

MR. GUTWILLIG:  No objection, your Honor.  Just one

note is that not only was the laptop made available for inspection by the defense, but the defense, in fact, examined the laptop.

THE COURT:  All right.

MS. SHROFF:  We haven't said otherwise, your Honor.

THE COURT:  No, I know you haven't.

MS. SHROFF:  No, I don't have an objection to that language.

THE COURT:  All right.  Just be patient with me.  Let me type this up.  And then what I propose to do is to show it to you and have it go into the jury room as a court exhibit.

MS. SHROFF:  Your Honor, I'm assuming the note you're sending in does not say that the laptop was made available to us for inspection, right?

THE COURT:  First of all, I'm going to read the note.

MS. SHROFF:  Okay.

THE COURT:  I have no plan of putting that in there, no, no --

MS. SHROFF:  Thank you.

THE COURT:  -- but I'm going to read it to you.

MS. SHROFF:  Okay.

THE COURT:  I'm just taking a minute.  I kind of said it ad lib, and now I'm taking a minute to type it out.  Then I'm going to print it out, you're going to see it, and you're all going to tell me whether it's okay to go into the jury

room.

MS. SHROFF:  Thank you, your Honor.

(Pause)

THE COURT:  I will read it into the record but you're going to get a hard copy of this in a moment:  "The Court has conferred with the parties in response to your note inquiring whether the jury received 'the right laptop,' and noting that there is evidence on the laptop that the jury has not seen before, e.g. GX 334.  The Court instructs that not all exhibits that have been received into evidence have been published to the jury during the trial; for example, GX 334 was received into evidence but not published to the jury.  Evidence received but not published may be considered by the jury.  If you have any question about any other exhibit, you may send the Court a further note.  In the future, your notes should be signed by the foreperson and dated."

Take a look at it, and let me know if there's an objection.

MR. GUTWILLIG:  No objection, your Honor.

MS. SHROFF:  Your Honor, may I just see the note for just one second?  Would that be okay?

THE COURT:  Sure.

(Pause)

MS. SHROFF:  It's fine, your Honor.

THE COURT:  All right.

I'm putting my physical signature and the date on the one going into the jury room, and I'm marking an identical copy of the text as a Court Exhibit 12.  And if you could please give this to the deputy marshal to be given to the jury.

We are adjourned unless there's anything else?

MR. GUTWILLIG:  Nothing further from the government, your Honor.

MS. SHROFF:  No, your Honor.

THE COURT:  Okay.  Thank you.

(Recess pending verdict)

THE COURT:  We have two notes from the jury:

Court Exhibit 13, which says:  "May we please have a copy of Alex Ardon's testimony concerning the Valle plot to kill National Party mayors in Copan, and Juan Orlando saying, 'Don't tell Tony about this'?"  That's the first note, 13.

And note 14 is:  "Could we please have a copy of the testimony of Tulio Armzuel" — I'm not sure — "Romero Palacios, regarding the security detail and who exactly was guarded?"

And then underneath the signature of the foreperson, on Court Exhibit 14, it says:  "May we also have the testimony from Juan Orlando Hernandez regarding Tony Hernandez's security detail?"

So let me hear first from the government as to Court Exhibit 13.

MR. GUTWILLIG:  Your Honor, with respect to both

O37KHER2

exhibits, the parties have conferred and agree on the relevant transcript portions.

THE COURT:  Okay.

MR. GUTWILLIG:  We have provided those to the Court's deputy by email and redacted -- or they should be on the way.

THE COURT:  All right.  Well, what I'm looking at right now is Ardon, page 266, starting at line 12 and running to 267, line 21.

MR. GUTWILLIG:  That's correct.

THE COURT:  Is there anything else?

MR. GUTWILLIG:  Not from the government's perspective, not for that particular issue.

THE COURT:  For Court Exhibit 13?

MR. GUTWILLIG:  Correct.

THE COURT:  And the defendant's position on Court Exhibit 13?

MS. SHROFF:  We concur.

THE COURT:  Okay.

So what I'm going to do is, right now, I'm going to have this -- well, Flo if you could mark an extra copy as Court Exhibit 15, and if you could provide these two pages — I'll give it to Stuart — to provide it to -- where is the deputy?

THE DEPUTY CLERK:  Behind the door.

THE COURT:  -- if you could provide it to the deputy to go into the jury room.

O37KHER2

With regard to Court Exhibit 14, let me hear from the government.

MR. GUTWILLIG:  Your Honor, with respect to Court Exhibit 14, as to both questions, the parties have conferred on the relevant transcript citations.  We're providing copies of those materials to the Court's deputy that redact the colloquy in those.

THE COURT:  Okay.

MR. GUTWILLIG:  It's still sending due to the network signal in the court, but it should arrive shortly.

THE COURT:  Technology.

Ms. Shroff, am I correct there is no disagreement as to this?

MS. SHROFF:  We had some disagreement.  We resolved it and we've sent them the lines at issue.

THE COURT:  Okay.  That's wonderful.

I guess any day now we'll be getting it.

(Pause)

(Continued on next page)

O37HHer3

THE COURT:  I'm marking the Romero Palacios transcript pages as Exhibit 16A and the Hernandez Alvarado pages as 16B.

Any objection from the government ——

MR. WIRSHBA:  No objection.

THE COURT:  —— to the pages?

MR. WIRSHBA:  No objection to the pages, your Honor. We have one request for the Court that's joint between the parties.

THE COURT:  OK.  Ms. Shroff, any objection to the pages?

MS. SHROFF:  No, your Honor.

THE COURT:  Now, what's the joint request?

MR. WIRSHBA:  On page 1619, your Honor, with respect to the cross of the defendant ——

THE COURT:  Yes.

MR. WIRSHBA:  —— just it says "before he was arrested, you assigned him part of your security detail."  I think the parties have agreed if the Court would to just bracket in "Tony Hernandez" there instead of the "he" so it's clear who we're talking about.  There's no doubt from the context who it is that is being discussed, but ——

THE COURT:  All right.  Let me try this.  This will be —— we'll just do it for the sake of good order here.  Let me try.

(Counsel confer)

THE COURT:  So what I propose to just do is have a separate piece of paper which will be marked as 16C, and it will simply read:  "On page 16, line 14, the words 'he' and 'him' refer to Tony Hernandez."

From the government?

MR. WIRSHBA:  That's fine from the government, your Honor.

Did you say page 1619, your Honor?

THE COURT:  That's what I said.

MR. WIRSHBA:  Yes, your Honor.

THE COURT:  And Ms. Shroff?

MS. SHROFF:  Your Honor, the government asked for that insertion, and we have no objection.

THE COURT:  So I'm doing it — rather than by insertion, I'm doing it by a separate piece of paper, that's all.

MR. WIRSHBA:  Your Honor, we have one other minor thing that we'd ask that the Court correct.

THE COURT:  All right.  What is that?

MR. WIRSHBA:  It's on page 1356, your Honor.  It won't require an additional thing.  It will just require a black Magic Marker.  There are three letters that are not redacted towards the bottom of the page on 1356.  We would ask that the Court just put a black Magic Marker over that.  And apologies. It appears to have not been taken out when the redactions were

O37HHer3

applied.  I'm happy to show it to your deputy.

THE COURT:  The GHT question mark?

MR. WIRSHBA:  Yes, your Honor.

THE COURT:  Is there any prejudice to leaving it in?

MS. SHROFF:  No.  I just noticed it was there, so I pointed it out.

THE COURT:  Do you want it taken out by Magic Marker?  I just think it looks strange having markings on it?

MS. SHROFF:  The defense doesn't care.  I just wanted to point it out.

MR. WIRSHBA:  That's fine.  No objection, your Honor.

THE COURT:  OK.  1356, the relevant testimony goes from line 15 to 23.  The stray characters are on line 25 which have no meaning to them and are irrelevant.

All right.  And these are the ones going to the jury, Flo?

THE DEPUTY CLERK:  The ones that you have?

THE COURT:  Yes.

THE DEPUTY CLERK:  Yes.

THE COURT:  Take a look at that.  Any objection?

MR. WIRSHBA:  None from the government.

MS. SHROFF:  Not from us.

THE COURT:  These three items are going to the jury, 16A, B, and C.

Anything else from the government?

O37HHer3

        MR. WIRSHBA:  Nothing from the government, your Honor.

        THE COURT:  From the defendant?

        MS. SHROFF:  No, thank you.

        THE COURT:  All right.  Thank you.  Thanks very much.

        (Recess pending verdict)

                            o0o