Renato C. Stabile
Attorney at Law
580 Broadway, Suite 600
New York, NY 10012
212-219-1469 (o)
212-219-1897 (fax)
917-204-0181 (mobile)
renato.c.stabile@gmail.com

July 10, 2024

**VIA ECF**
The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

                        Re:    *United States v. Juan Orlando Hernandez, et al*, 15 Cr. 379 (PKC)

Dear Judge Castel:

    Defendant Juan Orlando Hernandez submits this letter in opposition to the government's application that Mr. Hernandez forfeit $15,525,000. There is insufficient evidence that Mr. Hernandez personally received anywhere near that amount of money during this conspiracy.[1] In *Honeycutt v. United States*, 137 S. Ct. 1626, 1630 (2017), the Supreme Court considered 21 U.S.C. § 853 (a)(1), statute under which the government now seeks forfeiture. After reviewing the text of section 853, the Supreme Court ruled that "forfeiture pursuant to § 853 (a)(1) is limited to property the defendant himself actually acquired as the result of the crime." *Honeycutt*, 137 S. Ct. at 1635. Under *Honeycutt*, "a defendant may [not] be held jointly and severally liable for property that his co-conspirator derived from the crime but that the defendant himself did not acquire." *Id*. at 1630. A district court's forfeiture order must be supported by a preponderance of the evidence. *See United States v. Capoccia*, 503 F.3d 103, 116 (2d Cir. 2007).

    The evidence at trial mostly showed that other people received money from various DTOs (*e.g.*, Los Valles, Los Cachiros, Ardons, Sinaloa), but there was little evidence that any of that money was received by Mr. Hernandez. To the extent there was evidence of money paid directly to Mr. Hernandez, this Court would have to fully credit the uncorroborated testimony of drug dealers and mass murderers, like Alex Ardon, Leonel Rivera, Luis Perez, and Fabio Lobo, in order to conclude that any money was paid to Mr. Hernandez.

---

[1] Mr. Hernandez maintains his innocence and that he has been wrongfully convicted.

In support of the government's forfeiture calculation, the government cites portions of the trial record (and the PSR, which relies on the trial record) for various amounts the government claims should be forfeited by Mr. Hernandez. *See* June 24, 2024 Government Sentencing Memorandum, pp. 55-56. We address each of the amounts claimed by the government below.

1. **$2 Million from Alex Ardon to Pepe Lobo and the Defendant (Tr. 209-13)**

The trial testimony cited by the government does not indicate that Mr. Hernandez personally received money from Alex Ardon. In fact, during Ardon's testimony at the trial of Mr. Hernandez's brother, Tony Hernandez, in *United States v. Juan Antonio Hernandez Alvarado*, 15-CR-379 (PKC), Ardon testified that he made two $1 million dollar payments directly to Pepe Lobo and that the money was delivered to Lobo by Elias Hernandez. (Tony Hernandez Tr. 396-403). There was no evidence presented that any of that money was given to Mr. Hernandez.

2. **$2.4 Million from Sinaloa (Tr. 262-65, 626, 638, 1116)**

The government claims that an aggregate of $2.4 million was given to Mr. Hernandez from the Sinaloa cartel. The money was allegedly delivered in the increments described below:

   a. $1 Million Payment from El Chapo to Tony Hernandez (Tr. 262-65)

The testimony cited by the government indicates that $1 million was paid by El Chapo directly to Tony Hernandez in 2013. Mr. Hernandez was not present for this alleged payment, and there was no evidence presented that Tony Hernandez gave that money to Mr. Hernandez, as opposed to keeping it for himself.

   b. $1 Million Payment from Arnulfo Valle (Tr. 626, 635-638)

Luis Perez testified that Arnulfo Valle told Perez that Valle had paid $1 million to Mr. Hernandez to finance Mr. Hernandez's campaign. No details were given about when this payment was made, where this payment was made, how this payment was made, or who received the money. Valle was extradited to the United States under Mr. Hernandez's administration.

   c. $400,000 Payment from Luis Perez (Tr. 638-639)

Finally, Perez testified that in "2014," days before Mr. Hernandez was elected President of Honduras, Perez paid $400,000 to the chief of security of the vice-presidential candidate on the ticket with Mr. Hernandez, from whom Perez purchased a house. Once again, there was no evidence presented at trial that any of that $400,000 was given to Mr. Hernandez or any other details about this payment.

3. **$250,000 from Oscar Najera and Javier Rivera to Hilda Hernandez (Tr. 795-798)**

Leonel Rivera Maradiaga testified that in 2012, he gave $250,000 to a worker named "Fernando." Rivera claimed that he told "Fernando" to take the money out of a false bottom truck and take it Tegucigalpa and deliver it to Rivera's brother, Javier Rivera.

Rivera testified that Javier told him that Javier and Oscar Najera took the money and delivered

2

it to Mr. Hernandez's sister, Hilda Hernandez. There was no testimony about where this delivery occurred. Rivera testified that Javier told him that Hilda was concerned and that to alleviate her concern, Oscar Najera would exchange the U.S. dollars into Honduran lempiras.

There was no testimony about whether or not Najera actually exchanged the money, when he did so, where he did so, and whether or not he returned lempiras to Hilda. There was no evidence presented that the $250,000 (whether in dollars or lempiras) was given to Mr. Hernandez.

4. **$200,000 from Fabio Lobo and Javier Rivera to Hilda Hernandez (Tr. 1119-1120)**

Fabio Lobo testified that on an unspecified date, he gave $200,000 to Hilda Hernandez at a heliport in Tegucigalpa, Honduras, and that Lobo was accompanied by Javier Rivera. Lobo claimed that Hilda called Mr. Hernandez and that Lobo spoke with Mr. Hernandez on the phone and told him that Lobo was contributing to Mr. Hernandez's political campaign. Lobo testified that he did not disclose to Mr. Hernandez that Lobo was accompanied by Javier Rivera and did not testify that he told Mr. Hernandez the amount he supposedly gave to Hilda.

While the government portrays this meeting as a different meeting from the one in which Oscar Najera and Javier Rivera paid $250,000 to Hilda, Leonel Rivera only testified about one payment made by Javier to Hilda. There is enough confusion about whether or not Javier attended two different meetings with Hilda to supposedly pay her money, that the Court should not double count these alleged payments.

In any event, there is no corroborating evidence that these payments were ever made and no evidence that the money was ever given to Mr. Hernandez.

5. **$250,000 from Fabio Lobo to the Defendant (Tr. 1132)**

Fabio Lobo testified that in 2013, he gave $250,000 to Mr. Hernandez in a backpack that was handed to Mr. Hernandez inside of Lobo's car. There is no corroborating evidence of this payment and the Court would have to fully credit Lobo's testimony. Defense witness Tulio Armando Romero Palacios, who provided around-the-clock security for Mr. Hernandez starting in 2010, testified that he only saw Mr. Hernandez meet with Lobo one time and that Mr. Hernandez did not get into Lobo's car. (Tr. 1349). At best, the evidence is equivocal.

6. **$300,000 from Chinda Montes (Tr. 794)**

Leonel Rivera Maradiaga testified that during Moncho Lobo's birthday party, he spoke with Chinda Montes, aka Rosenda Montes. Rivera testified that Montes told him that she "along with all my children, we've given him $300,000 for his campaign through Moncho Lobo."

There was no corroborating evidence of this payment, no evidence about how much money came from Montes's children versus herself, no evidence about what giving money "through Moncho Lobo" meant, no evidence that Moncho Lobo gave Mr. Hernandez money, and no evidence that Mr. Hernandez ever received this money.

3

7. **$100,000 from Neftali Duarte (Tr. 812)**

Leonel Rivera Maradiaga testified that during a birthday party for Moncho Lobo, Rivera spoke on the phone with Neftali Duarte and that during that phone conversation, Duarte told Rivera that Duarte had given $100,000 to Mr. Hernandez and gave Mr. Hernandez use of Duarte's helicopter. There was absolutely no other evidence of this payment, no evidence as to when it was made, how it was made, where it was made, or to whom it was made. There was also no evidence that Mr. Hernandez used Duarte's helicopter.

8. **$4 Million from "Wilson", i.e., Sanabria, to Tony Hernandez (Tr. 1125, GX 403-T)**

Fabio Lobo testified that in 2013, he was with Tony Hernandez when Tony received $4 million cash in a bag from "Wilson." Lobo said that Tony took the bag to Tony's home and that during the drive, Tony called Mr. Hernandez and placed him on speaker to tell Mr. Hernandez that the Valles had given the money. Since there is no corroborating evidence of this payment (or the phone call), the Court would need to fully credit the testimony of Lobo.

Even assuming the payment happened, there is no evidence that Tony gave this money to Mr. Hernandez. In fact, Giovanni Rodriguez testified that while he was partying with prostitutes at Tony's house, he saw a waist-high stack of money packaged in bundles, suggesting that the money Tony supposedly received from "Wilson," remained with Tony.

9. **$25,000 from Geovanny Fuentes Ramirez (Tr. 95-102)**

Jose Sanchez testified that in 2013, he was present for two meetings between Mr. Hernandez and Geovanny Fuentes Ramirez at the Graneros rice factory. Sanchez testified that during the first meeting, Ramirez had a briefcase containing $15,000 in $20 bills and gave the money to Mr. Hernandez, who asked Sanchez to exchange the U.S. dollars for Honduran lempiras.

According to Sanchez, his boss directed Sanchez to make out a check to his boss, so that someone could take it to the bank and cash the check into lempiras. There was no evidence presented at trial that the check was cashed, that lempiras were delivered to Mr. Hernandez, or that Mr. Hernandez left the meeting with any money at all or received any cash later. No check or banking records were produced at trial.

Sanchez testified that about two months later, Mr. Hernandez was back at Graneros meeting with Ramirez. Sanchez testified that at the second meeting, Ramirez took $10,000 in $20 bills out of his briefcase and handed it to Mr. Hernandez. Sanchez said that Mr. Hernandez handed Sanchez the $10,000 and asked Sanchez to exchange it into lempiras. Sanchez testified that he was asked to make out a check to Sanchez's boss's name, which he did. Sanchez testified that he handed the check to his boss and then left the meeting. There was no evidence of the check being cashed or of money being given to Mr. Hernandez. Sanchez testified that he obtained a video of Mr. Hernandez receiving money from Ramirez and that he sent copies of the video to two Honduran prosecutors, who shared a copy with former Honduran Attorney General Oscar Chinchilla. (Tr. 146-47). No video has ever been produced and Chinchilla was not called as a witness.

10. **$6 Million from Emilio Fernandez Rosa (GX 403-T, Tr. 1479)**

Emilio Fernandez Rosa was extradited under the administration of Mr. Hernandez. (Tr. 990, 1496). The government relies on GX 403-T, which is a transcript of a June 5, 2015 intercepted phone call between Alexander Mendoza (aka "Porky") and an unidentified female. (Tr. 1028). During the call, Mendoza references "Juan Guillermo" and says "it appears that H gave him 6 million dollars." There is no other evidence that $6 million was paid to Mr. Hernandez, when it was paid, how it was paid, to whom it was paid, or any other reliable details. Since the identity of the female speaker is unknown, there is no way of knowing whether or not the statement was in furtherance of any conspiracy or has any indicia of trustworthiness. The Court should not rely on such flimsy evidence to order forfeiture of $6 million.

**Conclusion**

The government has failed to prove that Mr. Hernandez personally received $15,525,000 as proceeds of any crime. In most of the above instances, there is no evidence whatsoever that money paid by various DTOs to third parties reached Mr. Hernandez himself. Under *Honeycutt*, Mr. Hernandez cannot be ordered to forfeit money he did not receive. In the instances where the government introduced evidence that money was paid directly to Mr. Hernandez, the evidence is insufficient to satisfy the government's burden of proof in seeking forfeiture and the Court should decline to order any forfeiture amount in this case.

Respectfully submitted,

/s/

Renato C. Stabile, Esq. (RS8925)
580 Broadway, Suite 600
New York, NY 10012
212-219-1469 (o)
renato.c.stabile@gmail.com
*Attorney for Juan Orlando Hernandez*

cc: All counsel via ECF